[No. 9510.    Department Two.    October 13, 1911.]

W. H. FLUHART, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

STREET RAILWAYS — COLLISION WITH PEDESTRIAN — CONTRIBUTORY NEGLIGENCE—EVIDENCE. A pedestrian is guilty of contributory negligence, as a matter of law, in stepping in front of a well-lighted car approaching on an unobstructed street with which he was familiar, on a foggy night, where he was looking and could see a block away in the opposite direction and "walking right along," and was struck by the car before he reached the track, and the physical facts dispute his oral statement that, just before, he had looked for and could not see the approaching car.

SAME—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE. Where the contributory negligence of a pedestrian in stepping in front of an approaching car is the proximate cause of the accident, there can be no recovery, although the car was negligently run at an excessive speed.

SAME—DUTY OF MOTORMAN—LAST CLEAR CHANCE. The doctrine of the last clear chance to avoid an accident does not apply to a case where a pedestrian walked in front of a well-lighted approaching street car, on an unobstructed street, and was struck by the car before he reached the track, after he had looked and could have seen the approaching car, as the motorman had a right to assume that he would stop and let the car pass.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 24, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an

[1]Reported in 118 Pac. 51.

action for personal injuries sustained by a pedestrian struck by a street car.    Reversed.

*James B. Howe* and *A. J. Falknor*, for appellant.
*Douglas, Lane & Douglas*, for respondent.

Crow, J.——Action by W. H. Fluhart against Seattle Electric Company, a corporation, for damages resulting from personal injuries.    From a judgment in plaintiff's favor, the defendant has appealed.

Numerous assignments of error have been presented, but we will only discuss appellant's contention that the trial court erred in denying its motions for a nonsuit, a directed verdict, and judgment *non obstante veredicto*.    Galer street, in the city of Seattle, running east and west, is intersected by Queen Anne avenue and parallel cross-streets known as First avenue west, Second avenue west, Third avenue west etc.    Appellant operates a double track electric street railway on Galer street, east-bound cars running on the southerly and west-bound cars on the northerly track.    Respondent resided in a large apartment house known as Queen Anne Court, located on the south side of Galer street about eleven feet east of First avenue west, and between that avenue and Queen Anne avenue toward the east.

On December 29, 1909, about 10:15 p. m. respondent, who was a teamster, started across Galer street to an alley on the opposite side, where a barn was located in which he kept his horses.    He testified, that the distance from the curb in front of Queen Anne Court to the south car track was about fourteen feet; that the night was dark and foggy; that he could not see clearly; that he walked from the curb to the south track; that he first looked west then east, and was about to look west again when a car running easterly on the south track struck and injured him; and that the motorman did not ring a bell or sound a gong.    Respondent knew nothing after the car struck him, being then unconscious.    The

motorman, a witness for appellant, was the only other person who saw him near the track. His testimony indicated negligence on the respondent's part. Other witnesses produced by respondent testified that the night was foggy, that the car ran at a dangerous speed of from 20 to 25 miles per hour, and that they heard no bell or gong. Evidence was produced by appellant to show that the night was clear; that respondent's view was unobstructed; that the gong was sounded; that the car did not run at an excessive or dangerous speed; that it had been running up a 4.8 per cent grade for three hundred and sixty feet when it struck respondent; that respondent negligently and unexpectedly placed himself in a position of danger; that the motorman did not have time to prevent the accident, although his car was under good control; and that he made an excellent emergency stop.

When considering appellant's motions for a nonsuit and a directed verdict, it is our duty to accept as true all evidence supporting respondent's contentions. We will therefore proceed upon the theory that the evidence was sufficient to show the night was dark and foggy; that the car was running at an excessive and dangerous speed; that no bell or gong was sounded; and that, by reason thereof, appellant negligently operated its car. Appellant contends that the undisputed physical facts as disclosed by the evidence show that respondent was guilty of contributory negligence which was the proximate cause of the accident. It is undisputed that the car had been running up grade for about three hundred and sixty feet, but before reaching that grade it had just left a like down grade. Respondent was 36 years of age, in good health, and possessed of usual faculties, had resided for some months in Queen Anne Court, was familiar with the tracks, the locality, and the running of the cars. In his testimony he said:

"I opened the door and stepped out on the sidewalk, and looked down towards the street—down towards the west, and

did not see anything, and I looked up east, looked up the hill, and did not see anything, and I kept on going, going on out, stepped off the curb, and looked to the westward again, and I could not see very far, it was so foggy, and I did·not notice anything, and I looked up the east way, up the hill, and it was all clear of cars from the end of the hill, and as I turned around my head, that is the last I remember; that is all I know; I was struck by something."

The hill of which respondent speaks was to the east at Queen Anne avenue, practically one city block distant. It will be noticed from his statement that he could see that far notwithstanding the fog, as he says, "It was all clear of cars from the end of the hill." The car that struck him came from the west. It is conceded that, under ordinary conditions, a car could be seen in that direction a distance of several blocks. The undisputed evidence shows this car was lighted inside, and that it also carried a headlight shining brilliantly toward respondent. If respondent could see through the fog as far as Queen Anne hill, a distance of practically one city block, unquestionably he could see a well-lighted car for at least an equal distance when it was approaching him from the west. He was not on the track, as he was struck by the outer edge or body of the car. He further testified:

"Q. How far is it from the place you last looked to the first street car track? A. To the first street car track? Q. To the street car track that the car was on? A. Why, I presume I was about five or six feet; that is, when I looked to the westward, about half way when I looked to the westward then I looked to the east, and I don't suppose but what I took a few more steps when I looked to the eastward; I was moving right along. Q. How far is it from the edge of the parking strip to the first car track? A. About fourteen feet. Q. And had you looked to the westward at the time you left the parking strip? A. Yes; I looked to the westward after I left the parking strip."

From this evidence and the undisputed situation it unquestionably appears that respondent walked too close to the

track after he saw the approaching car, or at least after he could or should have seen it in the exercise of ordinary care. The fact that the motorman operated the car at a dangerous and unlawful rate of speed, although negligence, would not entitle respondent to a recovery if he was also negligent and his contributory negligence was the proximate cause of the accident.  If, as he says, he looked west toward the approaching car when he was half way from the curb to the track, he did so when he was within seven feet of the track. Thereafter he could not have proceeded more than two or three ordinary steps.  He had not reached the track when struck.  It is unreasonable to accept the theory that he could see to the top of the hill at Queen Anne avenue to the east, and yet, within two or three steps of the track, could not see far enough west, aided by a brilliant headlight, to observe that the car would probably strike him before he reached the track, as he "was moving right along."  If the fog was so dense he could not see an approaching headlight in time to avoid being overtaken, while walking only two or three steps, he was inexcusably negligent and reckless in "moving right along" toward the track without using his other senses to learn existing conditions and assure himself of safety.

In principle this case does not materially differ from the rule announced by this court in *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458, and *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471.  Respondent was not at a street crossing, although but a few feet distant therefrom.  If it was too foggy for him to see a car he should have realized it would be too foggy for a motorman to see him before he unexpectedly appeared upon or near the track.  When he approached the track, the duty of exercising due care rested upon him. The street was not thronged with pedestrians, vehicles or cars which might distract and confuse him.  There were no

pedestrians other than himself at the immediate scene of the accident, and the offending car was the only vehicle then shown to be upon the street. Being familiar with the location, respondent should have been able to apprise himself of the approach of the well-lighted car over an unobstructed street, and could have done so had he exercised ordinary care and prudence. There was neither necessity nor excuse for stepping in front of the car even though it was approaching at an unlawful speed. . Negligence on the part of appellant did not relieve respondent from the duty of exercising care and avoiding contributory negligence on his part. Although respondent says he did not see the approaching car, it is manifest he could have observed it, as he did see the further track was clear as far as the hill at Queen Anne avenue. Instead of looking west after looking east, and before proceeding, he walked right on and was struck before turning his head. In *Helliesen v. Seattle Elec. Co., supra*, the plaintiff was struck at night at a street crossing by a well-lighted car. She testified that, before stepping on the track, she looked east, saw no car and heard no bell. It appeared that if she had looked as she said she did she must have seen the car some forty feet distant. In holding her guilty of contributory negligence, this court said:

"We cannot understand how one looking for a car can fail to see a lighted car with its headlight throwing on the track ahead of it, and only forty-two feet away. The physical facts of the situation are a unit in showing respondent could not have used ordinary care in attempting the crossing. If she looked she must have seen the car, or else she gave such an indifferent and casual glance as was of no value to her in determining whether or not a car was approaching. In either event, she was not using ordinary care. The car was there with its lights burning, and such a look as would be given by an ordinary, prudent person would have located it. Pedestrians in crossing the tracks of a street railway in the daytime or in the nighttime, knowing as respondent knew that the crossing was one where cars frequently passed, must use their senses to apprise them of danger, if any; they can-

not heedlessly and carelessly cross the track, and throw the entire burden of their safety upon the motorman of any approaching car. The rights of the pedestrian and that of the street railway are equal. Their duties are reciprocal. Neither has the exclusive right of way; each must have due regard to the rights of the other."

In a concurring opinion, Judge Gose well said:

"There must of necessity be reciprocal duties upon the pedestrian and the street railway company. The track itself is a danger signal, and the pedestrian cannot be absolved from using the care which ordinary prudence demands. Under the circumstances admittedly present in this case, the act of the respondent in starting to cross the track was gross negligence. The verdict of a jury will not be permitted to control physical facts. In concurring I assume that there was competent evidence from which the jury might find that the motorman did not ring the bell after leaving Summit avenue, but it does not follow that the respondent could step in front of a well-lighted, moving car so near her that she could not withdraw her foot in time to avoid being struck by it, without being guilty of such negligence as to preclude a recovery."

While there was evidence given by a number of witnesses to the effect that the night was foggy, it does not appear the fog was sufficiently dense to prevent the witnesses from seeing a considerable distance. One of respondent's witnesses testified that, on emerging from Queen Anne Court immediately after the accident, she saw parties lifting respondent from the street. His distance from Queen Anne Court must have been the width of the sidewalk, the parking, and the fourteen feet beyond the curb toward the south. In addition to this, his witnesses testified that he was thrown some sixty feet toward the east and away from the Queen Anne Court entrance. One Wheeler, respondent's witness, testified he was slowly walking in an easterly direction down Galer street; that the car passed him going in the same direction, near Third avenue west; that it was then running about twenty to twenty-five miles per hour; that he followed,

walking slowly, and that he saw the car for a distance of about 600 feet, when it stopped. Conceding it to have been "quite foggy," or dark and foggy as respondent and his witnesses testified, it is nevertheless apparent that respondent could have seen the car for a considerable distance before it reached him, or that he did not look. In either event, he was negligent.

In the *Skinner* case, *supra*, the plaintiff, a man 81 years of age, was held guilty of contributory negligence as a matter of law by reason of the fact that on a dark night he stepped in front of a well-lighted approaching car. The physical and undisputed facts in this case indisputably show respondent must have done substantially the same act, by stepping too near the track in front of a rapidly approaching and well-lighted car. Evidence of physical facts making it certain a pedestrian must have seen, or could have seen an approaching car had he looked, renders unavailing his unsupported statement that he did look but could not see. Oral statements, although undisputed, must yield to undisputed physical facts and conditions with which they are irreconcilable. From the physical facts and respondent's evidence it is apparent he recklessly, carelessly, and negligently walked too near the approaching car, and that in so doing he was guilty of contributory negligence.

As affecting the right of appellant to have its motion for a directed verdict sustained, we call attention to the fact that instructions given by the trial judge to which appellant excepted, and on the giving of which it has assigned error, indicate that the verdict of the jury might have been predicated on the last clear chance doctrine, upon which the trial judge instructed the jury. Conceding the instruction correctly stated an abstract principle of law, yet, under the issues and evidence, its giving was misleading and erroneous, as no facts were pleaded or proven to which the last clear chance doctrine could be applicable. If, as respondent contends, the night was sufficiently foggy to prevent him from seeing the

car, it would be just as impossible for the motorman to see him in time to do any act for his protection. There is no evidence that, after the motorman first observed the respondent, he failed to discharge any obligation or duty imposed upon him by the last clear chance doctrine. The only evidence on that proposition is to the contrary. The motorman testified that he saw the plaintiff look in the direction of the car and walk toward the track. He properly assumed respondent would stop and permit the car to pass. The motorman of a street car has the right to assume that no one will attempt to cross the track so near the car as to render a collision probable, or make it impossible for him to stop the car in time to avoid a collision. If a motorman may not assume pedestrians will exercise due care, until their conduct or appearance warn him to the contrary, it would be simply impossible for him to operate his car.

Our conclusion is that the last clear chance doctrine cannot be applied to the facts in this case, that the respondent was guilty of contributory negligence, that such negligence was the proximate cause of the accident, and that he is not entitled to recover. Reversed, and remanded with instructions to dismiss.

ELLIS, CHADWICK, MORRIS, and PARKER, JJ., concur.