[No. 9733. Department One. December 16, 1911.]

RICHARD MALLETT, *Respondent*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant*.[1]

STREET RAILWAYS — NEGLIGENCE — COLLISION WITH PEDESTRIAN — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In an action for personal injuries sustained by a pedestrian run down from behind by a street car, the negligence of the defendant and the contributory negligence of the plaintiff are for the jury, where it appears that plaintiff in the daytime was lawfully using the street car tracks, there being no sidewalks in the street, that he crossed to the east tracks upon meeting a car on the west tracks, and then looked back where he could see for a distance of nine hundred feet and saw no car approaching, and after going about thirty or forty feet, was struck by a car going at a high rate of speed which gave no alarm in time to enable him to escape; although on the evidence offered by the defendant, the jury might have found that the accident happened in an entirely different way without any fault of the defendant; since plaintiff was not a trespasser and the motorman would not be justified in running him down without warning.

APPEAL—REVIEW—NEW TRIAL—DISCRETION. The trial court having exercised its discretion to refuse a new trial, the supreme court is not justified in granting a new trial upon conflicting evidence that made a case for the jury.

[1]Reported in 119 Pac. 743.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 14, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained by a pedestrian struck by a street car.    Affirmed.

*Will H. Thompson* and *Morris B. Sachs*, for appellant.
*Heber McHugh* and *John T. Casey*, for respondent.

MOUNT, J.—Action for personal injuries.    The plaintiff was struck by one of defendant's cars, running upon the easterly track of a double-track electric line, on Rainier avenue, in the southerly part of Seattle.    His left leg was broken, and he received other injuries.    The case was tried to a jury.    At the close of the plaintiff's evidence, a motion for a nonsuit was made and denied.    At the close of all the evidence, the case was submitted to a jury, and a verdict was rendered for the plaintiff.    The motion for new trial was made and denied, and judgment followed.    This appeal is prosecuted by the defendant from that judgment.

Two assignments of error are made, (1) that the court erred in denying defendant's motion for a nonsuit; (2) that the court erred in overruling defendant's motion for a new trial.    In considering the first assignment, we must take the evidence offered in behalf of the plaintiff as the facts in the case.    It appears therefrom that the defendant maintains a double-track electric street railway, upon Rainier avenue, from south of Court street north.    This avenue extends in a northerly and southerly direction.    On the east side, the avenue was paved or covered with planking sixteen feet in width, for street travel.    There were no sidewalks for pedestrians upon either side of the avenue.    This planking abutted up to the lower part of the ties of the easterly track of the street railway.    The two tracks of the railway were some twelve inches—or possibly more—higher than the planking.    Between the two tracks the ground was uneven.    On the westerly side of the tracks, the street was not

improved or used. It was the custom of pedestrians living south of Court street to use the tracks for travel to the north.

On the afternoon of August 4, 1909, the plaintiff intended to go from Court street to the post office, about a block north. He entered upon the westerly track of the railway. The day was clear and bright and the way was dry. He traveled some forty or sixty feet either between the rails of the westerly track or between the two tracks, when he saw a car coming toward him from the north. He thereupon crossed over to the easterly track. After this car passed, he looked back toward the south, but saw no car upon the easterly track. At that point the cars going south occupied the westerly track and those going north occupied the easterly track. The tracks were level and straight, so that one could see a car from Court street south about nine hundred feet, and north three hundred feet— possibly more.

After plaintiff crossed over onto the easterly track, he proceeded to walk north on the track. When he had gone a short distance, probably thirty or forty feet, he heard a shout and a bell, and turning to the right saw a northbound car so close upon him that he did not have time to escape from the track. The car struck him and threw him to the planked part of the street. He was rendered unconscious. The car was stopped so that the rear platform of the car was opposite where he lay. There was evidence that the car which struck the plaintiff was running very fast. One witness put the speed at thirty miles per hour. This estimate, we think, was much exaggerated.

Counsel for appellant argue that the street car track was of itself a danger signal, and that the plaintiff in using the same as a foot path was obliged to use his senses and keep out of the way of approaching cars. It is no doubt true that the plaintiff was obliged to use his senses, and if he knew or, in the exercise of ordinary care, should have known that a

car was coming down upon him, either in front or from be-
hind, it was his duty to avoid danger.  The defendant was
not a trespasser.  He was rightfully in the street and upon
the track.  And while he was required to use his senses and
take notice of the fact that cars were in use upon the street
railway tracks, he was not required to use the same degree
of care as a man upon a private way or upon a steam rail-
way.  *Chisholm v. Seattle Elec. Co.*, 27 Wash. 237, 67 Pac.
601.  In that case we said:

"It is a well-established rule of law that a pedestrian is
not charged with the negligence of street car operators, but
that he is justified in basing his calculations and ordering
his movements on the assumption that the car will be operated,
not only in conformity with local laws regulating it, but
with the highest degree of care and a due regard for the
safety of the traveling public, who are equally with it en-
titled to use of the streets."

And in *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122,
89 Pac. 488, we said:

"If the motorman sees a clear track and has no occasion
to stop and no reason to anticipate danger to another, it
would not be negligence to maintain the usual rate of speed,
even over a crossing.  But if he sees, or ought to see, per-
sons or vehicles thereon, not able to get out of his way
readily, it would certainly be negligence not to have such
control of his car as to be able to stop before reaching such
crossing."

We think this rule applies in this case.  The plaintiff,
according to his testimony, was walking upon the street
car track.  He got out of the way of a car coming toward
him in front.  After that car passed by him, he looked down
the track behind him and saw no car coming.  The car
which a little later struck him was no doubt somewhere near
the car which had just passed him.  The question whether
he should have seen this car depends, of course, upon the dis-
tance it was away and was, we think, a question for the jury.
But certainly, if the plaintiff was walking upon the track

with his back to the on-coming car, he was in plain view of
the motorman, who must have seen him.    No doubt the mo-
torman had a right to suppose that the plaintiff would clear
the way for the car before the car reached him, but it was
the duty of the motorman to give some alarm so as to call
the attention of a man of ordinary senses upon the track to
the fact that the car was approaching him.    In other words,
the motorman would not be justified in running down a pe-
destrian without some warning in time for the pedestrian to
escape.

Appellant relies upon *Fluhart v. Seattle Elec. Co.*, 65
Wash. 291, 118 Pac. 51; *Helliesen v. Seattle Elec. Co.*,
56 Wash. 278, 105 Pac. 458; *Coats v. Seattle Elec. Co.*, 39
Wash. 386, 81 Pac. 830, and other cases of that character.
These were all crossing cases where the injured parties
placed themselves immediately in front of cars which were
known, or should have been known, to be approaching. These
cases are entirely different from this, because here, if the
plaintiff's story is true, he was run down without warning
given in time for escape and without knowledge of the ap-
proach of the car.    We think the questions of negligence of
the defendant and of the plaintiff were for the jury.

Appellant argues upon the second assignment of error
that the whole evidence shows that the plaintiff is not en-
titled to recover, and therefore the court should have granted
a new trial.    The evidence on behalf of the defendant tends
to show that the plaintiff was returning from the post office
instead of going there; that he was traveling south instead
of north; that he was walking upon the planked part of the
street to the east of the east railway track, facing the on-
coming car, in a place of perfect safety; that just before
the car reached him, he turned to his right and attempted to
step with his left foot upon the track almost immediately in
front of the car; that the bell was sounded and the motor-
man and a passenger upon the car called loudly to him.
The motor was reversed, but plaintiff being so close to the

car was struck and injured when there was no opportunity to
stop the car. There is ample evidence and circumstances
in the record to show that the injury occurred in that way.
If it did so occur, the defendant was not liable under the
cases cited by appellant and noticed above. This is a case
where the jury must discredit the whole of the evidence on
one side or the other, in so far as it relates to the manner
of the injury. If the truth is as related by witnesses for
the defendant, plaintiff was clearly not entitled to recover.
The question was one for the jury, and the jury having
found for the plaintiff, and the trial court having refused to
exercise his discretion and grant a new trial, as he might
have done, we feel that we are not justified in doing so.

The judgment is therefore affirmed.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ., con-
cur.