[No. 10626. Department One. January 3, 1913.]

PAUL STUEDING, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant*.[1]

STREET RAILWAYS—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEG-
LIGENCE OF PEDESTRIANS—EVIDENCE—SUFFICIENCY. The contributory
negligence of a pedestrian, struck by a street car, precludes any
recovery, as a matter of law, notwithstanding negligence on the
part of the company in excessive speed, where it appears that he ap-
proached a street car crossing where a car was unloading passen-
gers, with an unobstructed view of the far track where he could have
seen an approaching car, that he did not look in that direction until
near the standing car, which then obstructed his view, and walked
rapidly behind the standing car without stopping to look, and was
struck by the side or front end of a car passing on the other track.

Appeal from a judgment of the superior court for King
county, Gay, J., entered March 26, 1912, upon the verdict of
a jury rendered in favor of the plaintiff, in an action for in-
juries sustained by a pedestrian struck by a street car. Re-
versed.

*James B. Howe* and *A. J. Falknor*, for appellant.

*Robert Grass* and *Ralph A. Horr*, for respondent.

GOSE, J.—The defendant operates a double track electric
street railway, known as the Eastlake line, on Fourteenth
avenue northeast, in the city of Seattle. The avenue runs
north and south, and is intersected by East Forty-seventh
street, which runs east and west. The outbound car runs on
the east track and the inbound car runs on the west track.
The distance between the east rail of the east track and the
curb on Fourteenth avenue is thirteen feet, seven inches. The
distance between the rails of the respective tracks is four feet,
eight and one-half inches. The distance between the tracks is
five feet, one inch; and the clearance between bodies of passing
cars is sixteen inches.

[1]Reported in 128 Pac. 1058.

On March 26, 1911, at about the hour of 6:45 in the afternoon, the plaintiff was returning to his fraternity house, situated at the northwest corner of Fourteenth avenue northeast, and East Forty-seventh street. He traveled west upon the north side of East Forty-seventh street, walking rapidly until he reached the sidewalk or curb on Fourteenth avenue, where he says he slowed to an ordinary walk. The outbound car had stopped at or about the north line of Forty-seventh street and was discharging passengers. He proceeded toward the standing car until he was about midway between the curb and the east track, looked north, then continued west, passing about four feet to the rear of the standing car, when he was struck by the inbound car as he emerged from behind the standing car, and received the injuries which form the basis of this suit.

The avenue and the street intersect in a thickly settled residential district. Fourteenth avenue north of the point of intersection runs straight. It is comparatively level, and cars to the north are in open view for several blocks when there is no obstruction to the line of vision. The houses upon the east side of Fourteenth avenue are back some distance from the sidewalk. The plaintiff and his witnesses say that it was twilight or dusk when he met his injury. When he had reached a point twenty or thirty feet from the sidewalk on Fourteenth avenue, there was nothing to obstruct his view to the north, and had he looked to the north at any place between that point and the curb he could have seen the south-bound car. His witnesses estimate the speed of the south-bound car at from fifteen to twenty-five miles per hour, and either say that they heard no bell or other warning, or that no bell was rung and no warning given. The speed limit on that line was twelve miles an hour. The plaintiff was twenty years of age, a university student, had lived in the fraternity house about two weeks and in the city about five months, and was familiar with the location of the tracks and the manner in which the cars were run on Fourteenth avenue. There was a

verdict and judgment for the plaintiff, and the defendant has appealed.

The only point pressed by the appellant is that the respondent was guilty of contributory negligence, and hence that it incurred no liability. The respondent's evidence may best be stated in his own language. He says:

"A. Well, I had been over to my own home at 17th avenue Northeast for dinner; and I left there about six-thirty, to go to my fraternity house on 47th and 14th avenue Northeast; and I went up 17th avenue to 47th, and then down the north side on the sidewalk of 47th avenue or 47th street; and when I came to 14th avenue there was a car standing there and the passengers were getting off; and as I stepped from the curb I glanced down the street and the automobile was approaching. I did not stop but I immediately glanced up 14th, and then passed around back of this car which was standing there, and as I stepped out back of the standing car I was struck by the inbound car, and after that I do not know anything; I do not know what happened. . . . I looked to the north just after I looked to the south; my attention was naturally directed to the south on account of this automobile and I was probably half way between the car and the sidewalk when I glanced to the north . . . Q. And when you got about half way between the curb and the track you looked north? A. Yes; my attention was naturally directed south on account of the automobile. Q. That kept you from looking when you looked to the north, the car standing there obstructed your view of the approaching car? A. It did for a short ways. Q. Anyway, as you looked to the north it obstructed your view so you could not and did not see the car coming on the opposite side of the standing car? A. Well, I saw a car further up the track but that did not obstruct the whole view. Q. But anyhow it naturally did obstruct your view of the car which was coming? A. To a certain extent, yes. Q. And you did not see the car, did you? A. No, sir, I did not see the car. Q. Then you walked hurriedly around the rear of the car? A. I walked around the rear of the car. Q. The car was standing still all the time? You did not wait until the car discharged the passengers and moved out of your line of vision? A. No, I did not. Q. You went around, how close to the rear of the

car did you go?   A.  I should judge it was about four feet.
. . . .  Q.  Now when there are no cars to obstruct your
vision, you can see north of that block, probably a quarter of
a mile, can't you?   A.  Several blocks, I don't know how far.
Q.  Have you any recollection as to your having come into
contact with the car?   A.  Except as of course it all happened
in a second, and I had the sense of being struck, but it was
too late.   Q.  When you got back of the rear of the car, you
did not stop and look around the rear of the car?   A.  I did
not.   Q.  You kept right on going?   A.  I did.   Q.  The
only time you looked to the north was the time that you were
about half way between the curb and the car?   A.  That is
the time I remember of looking for cars, and the only time
too.   Q.  That is the only time you remember of looking, is
it not?   A.  Yes.   That is in the street.   Q.  At that time
a car was standing there?   A.  Yes.   Q.  Now, you don't
know what portion of the car came in contact with you, do
you?   A.  No.   I cannot state specifically what part of the
car came into contact with me.   Q.  You seemed to have the
realization of it when you went around the rear of the car;
at that instant there was a car there?   A.  I was too far gone
to get out of the road.   Q.  Well, you could see as you left
the sidewalk, you could see a considerable distance north,
couldn't you?   A.  I could.   Q.  And if one looked close to
the sidewalk, his line of vision would be increased to the
north?   A.  That is, on the hill?   Q.  Now, that is on the
level?   A.  Well, coming down?   Q.  Yes, as one comes down
the sidewalk, as he approaches the sidewalk, his line of
vision would continually increase to the north?   A.  Yes.   Q.
On account of looking over that way?   A.  Yes.   Q.  When
you stopped there, about half way between the sidewalk and
the curb, the standing car was within five or six feet of you?
A.  When I stopped?   Q.  I mean when you say you looked
to the north, the standing car was within five or six feet of
you?   A.  Something like that; I don't know the exact num-
ber of feet, three or four or five feet; something like that.   Q.
It was daylight at the time?   A.  It was about six-thirty,
I should judge, it was just getting dusk.   Q.  Yes; but it
was daylight so that you could see all around without any
difficulty.   A.  You could see as much as you can at any time
at that time.   Q.  At that time it is not dark; it is daylight?
A.  It is not dark, no; but it is a kind of a twilight; it is not

exactly daylight. Q. Now, there was nothing to prevent you seeing cars or anything of the kind, or the automobile? A. No, sir."

The automobile to which respondent alluded stopped south of the southeast intersection of the avenue and the street. There were no obstructions to the north other than the standing car, and none to the south other than the automobile, and nothing else to distract his attention. The cars on that line are about forty-seven feet in length. Thomas Boyd, the driver of the automobile, a witness for the respondent, says that the respondent was "moving rapidly," "running" along the north side of Forty-seventh street, when he first observed him; that he was looking at the respondent when the car struck him; and, in answer to the question, "Was he walking, slow or fast?" answered, "I would say he was moving rapidly." The witness says: "He was struck by the heavy piece of timber covered by iron just along the front" of the car. Mrs. Williams, a witness for the respondent, observed the accident from the front window of her home immediately east of where the automobile was standing. She said that her view was clear; that she saw the respondent as he passed to the rear of the standing car; that she "followed his movements;" that he was "walking rapidly," and that "it was not the fender that struck him" but some portion of the side of the car. The respondent's testimony is clear to the point that he did not reach the west car track and that he collided with some projection upon the car near its front corner. The respondent is markedly frank in all his statements and there can be no doubt that he has narrated the events leading up to the catastrophe precisely as he recalls them.

The appellant's witnesses say that the car was traveling at a speed of from four to six miles an hour, and that the bell was ringing when it passed the standing car. The jury, however, was warranted in finding that the car was traveling at a speed of from fifteen to twenty-five miles an hour, and

that it gave no warning of its approach. This clearly established the appellant's negligence.

We think the contributory negligence of the respondent is equally manifest. Upon his own testimony, and there is none more favorable from his point of view, he was guilty of the most pronounced negligence. If he had used his powers of observation at any time after he was within twenty feet of the sidewalk on Fourteenth avenue and before he had stepped from the curbing to the street, he would have had a clear view to the north for several blocks and would have seen the approach of the offending car. He not only failed to do this, but looked at a point where he knew his view was obstructed and failed to use his senses before entering the danger zone from behind the standing car. One cannot read his testimony without being impressed with the fact that he continued his course utterly oblivious to the dangers which he knew he might encounter at any moment. One of his witnesses, who alighted from the outbound car at Forty-seventh street, says that he saw the south-bound car through the window of his car when it was nine hundred feet north of the street intersection. It is a fact, well known to all who have observed the operation of electric cars, that they may be heard for a considerable distance, and that the noise which they make increases as the speed of the car increases. This court, in harmony with many other courts, has taken the view that it is not ordinarily negligence *per se* for a traveler to fail to "stop, look, and listen" before crossing a street car track. But it has never held that he may go upon a street car track where the conditions are such as to suggest grave danger without taking any precautions whatever for his own safety. These views find firm support in *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *Mey v. Seattle Elec. Co.*, 47 Wash. 497, 92 Pac. 283; *Dimuria v. Seattle Transfer Co.*, 50 Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471; *Borg v. Spokane Toilet Supply Co.*, 50 Wash. 204, 96 Pac.

1037, 19 L. R. A. (N. S.) 160; *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Slipper v. Seattle Elec. Co.*, *ante* p. 279, 128 Pac. 233. ·

In the *Helliesen* case, we said:

"Pedestrians in crossing the tracks of a street railway in the day time or in the night time, knowing, as respondent knew, that the crossing was one where cars frequently passed, must use their senses to apprise them of danger, if any; they cannot heedlessly and carelessly cross the track, and throw the entire burden of their safety upon the motorman of any approaching car. The rights of the pedestrian and that of the street railway are equal. Their duties are reciprocal. Neither has the exclusive right of way; each must have due regard to the rights of the other."

In the *Mey* case, we said:

"This being true, it seems plain that it was the duty of the appellant, while traveling in close proximity to this track in a place where he testifies he knew that cars were passing at short intervals, to have exercised the ordinary caution of noticing, when he passed those points where there was not room for both man and car, whether there was any car which was liable to injure him. According to the testimony, the track was on an open, paved street where the slightest observation would have discovered the approach of a car. Not having exercised this ordinary caution, we think the plaintiff was undoubtedly guilty of contributory negligence."

In the *Dimuria* case, the plaintiff while crossing a street, carrying an umbrella over his head, without keeping a lookout, was struck by a team of horses and injured. In applying the law to such facts, the court said:

"From all of the evidence we are compelled to hold that the respondent was guilty of contributory negligence, as a matter of law, in failing to look for approaching teams or to take any other precaution for his personal safety. . . ."

It has been held in other jurisdictions with seemingly unanimity that one who passes behind a standing street car where there is a parallel track, without using his senses, will not be allowed to recover if he is injured by an approaching

car.   The same rule obtains where the traveler takes observations from a point where he knows that his view is restricted and then heedlessly passes into the zone of danger.  *Morice v. Milwaukee Elec. R. & Light Co.*, 129 Wis. 529, 109 N. W. 567; *Kennedy v. Worcester Consol. St. R. Co.*, 210 Mass. 132, 96 N. E. 78; *Hageman v. North Jersey St. R. Co.*, 74 N. J. L. 279, 65 Atl. 834; *Shuler v. North Jersey St. R. Co.*, 75 N. J. L. 824, 69 Atl. 180, 127 Am. St. 834; *Greengard v. St. Paul City R. Co.*, 72 Minn. 181, 75 N. W. 221; *Reed v. Metropolitan St. R. Co.*, 180 N. Y. 315, 73 N. E. 41; *Baltimore Traction Co. v. Helms*, 84 Md. 515, 36 Atl. 119, 36 L. R. A. 215; *Doty v. Detroit Citizens' St. R. Co.*, 129 Mich. 464, 88 N. W. 1050; *Foreman v. Norfolk, Portsmouth & Newport News Co.*, 106 Va. 770, 56 S. E. 805.

The respondent seems to rely chiefly upon *Richmond v. Tacoma R. & P. Co.*, 67 Wash. 444, 122 Pac. 351, and *Merwin v. Northern Pac. R. Co.*, 68 Wash. 617, 123 Pac. 1019. In the *Richmond* case, the plaintiff looked north when forty-five feet from the car track, where he had a clear view of the track for two hundred feet and saw no car.  We held that he had a right to assume that the motorman would observe the municipal regulations, and that whether it was negligence for him to proceed upon the assumption that he could cross the track in safety without taking further observations was a question for the jury.  In the *Merwin* case, the plaintiff stopped within a few feet of the southerly railroad track, when he looked and could see the track to the east for a distance of fifteen hundred or two thousand feet.  He then started his team and was struck by the west-bound train upon the northerly track.  Upon these facts, we held that it was for the jury to determine whether he was guilty of contributory negligence.  Common prudence demanded that the respondent should take his observations at a point where his vision was not restricted, and that if he failed to do so he should not pass behind the standing car and enter the zone

of danger without using his senses to ascertain whether there was an approaching car upon the west track.

The judgment is reversed, with directions to dismiss.

MOUNT, C. J., CHADWICK, CROW, and PARKER, JJ., concur.