[No. 12422.    Department One.    June 16, 1915.]

## EMILY ARPAGAUS et al., Respondents, v. WASHINGTON WATER POWER COMPANY, Appellant.[1]

STREET RAILROADS—INJURIES—COLLISION WITH VEHICLE—CONTRIB-
UTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. A driver of a team of
horses is guilty of contributory negligence, as a matter of law, pre-
cluding any recovery for his death caused by colliding with an ap-
proaching car, where it appears that he was driving west on
the wrong side of the street or making a diagonal cut across a jog in
the street, and in a place where the law of the road and common
prudence required him not to be in, that he could have seen the ap-
proaching car in time to avoid the accident had he looked when he
came in view before driving onto the track, but turned his horses
at right angles abruptly in front of the car so that the off horse was
struck in the shoulder and the accident made inevitable (HOLCOMB,
J., dissents).

SAME—NEGLIGENCE—PROXIMATE CAUSE. Liability in such a case
cannot rest upon the rule of wilful and wanton injury, as the proxi-
mate cause, since there was nothing to indicate to the motorman
that the deceased intended to pull across the track, until the moment
of the collision.

Appeal from a judgment of the superior court for Spo-
kane county, Blake, J., entered May 22, 1914, upon the ver-
dict of a jury rendered in favor of the plaintiffs, in an ac-
tion for wrongful death. Reversed.

*Post, Avery & Higgins,* for appellant.

*John M. Bunn* and *Turner & Geraghty,* for respondents.

CHADWICK, J.—About seven o'clock in the evening of Aug-
ust 21, 1913, Alois Arpagaus, fifty years old and engaged in
a small way in the transfer business in the city of Spokane,
was returning after a day's work to his home. His way led
from Munroe street west on College avenue to Walnut street.
Walnut street runs north and south, and College avenue east
and west. He turned north on Walnut street. The testi-
mony is conflicting as to whether he was driving fast or slow.

[1]Reported in 149 Pac. 346.

Witnesses for the plaintiffs say that he was walking his horses; that he was jogging along; that he was going at a slow trot; whereas, some of the witnesses for the defendant say that he was driving at a fast trot. There is a jog in Walnut street at Broadway, one block north of College avenue. Walnut street north of Broadway is about forty feet west of the point where it intersects the south line of Broadway, so that the west line south of Broadway is approximately the east line north of Broadway. When Arpagaus reached the corner, he turned west or to the left, intending, as it is presumed, to pursue his way north on Walnut street. There is testimony to show, and it is supported by the physical fact, that he did not drive straight across the car tracks, but drove to the south of the north or west-bound track. As he attempted to cross the track, his team was struck by one of appellant's street cars. He was thrown from his wagon and killed. This action was brought to recover damages. A verdict was rendered in favor of plaintiffs. The case was brought here upon appellant's challenge to the sufficiency of the evidence, the point being raised by a motion for a nonsuit, a motion for a directed verdict, motion *non obstante,* and for a new trial.

There is no evidence tending to show that the motorman was incompetent or that the car was driven at a faster rate of speed than allowed by the city ordinances. The trial judge held that there was no evidence sufficient to raise an issue as to the sounding of a gong or warning. There is no doubt that the usual warnings were given. So the only question remaining is whether, from a consideration of all the facts, the car was driven without regard for the rights of the decedent and the traveling public, and whether, if it was so negligently driven, Arpagaus was guilty of contributory negligence.

There is some testimony which, coupled with the physical facts, might be convincing to a jury, and, under the settled rule and the statute, we feel bound to say that the question

of negligence was one for the jury, and that its verdict has foreclosed this question.

This brings us to the remaining question, whether the deceased was guilty of contributory negligence. Each side cites many cases to sustain its contention, but as we have so often said, authority is of little value in cases of this kind. Each case rests upon its own facts. These being established, it is a question of principle rather than cases.

The testimony on both sides shows that the car was making quite a noise as it came down the street. One of respondents' witnesses testified that, at the middle of the block, the motorman sounded the emergency whistle, loud and long, and that he, having had experience on street cars, knew the meaning to be a danger alarm. There is also testimony that the gong was sounded at least a half a block away. There was a row of small trees in front of the houses on the south side of Broadway between Cedar and Walnut streets, but it is likely that Arpagaus could have seen the approaching car when twenty-five or thirty feet south of Broadway, had he looked. The seat of his wagon was five and one-half feet from the ground. Disregarding this possibility, all witnesses agree that, when he came opposite to the south curb of Broadway, he could have seen the car several blocks away. One witness testifies positively that Arpagaus turned north on Broadway and was south of the car track, and that he suddenly reined his horses to the right and in front of the car. Two others testify that he pulled the right line so as to swing his team directly in front of the car. All witnesses agree that he was turning at right angles after having gone some distance west on Broadway. The rate of speed at which he was driving is pertinent to the question of contributory negligence. If he was walking his team, or driving them at a slow trot, or jogging along, he must, if he had taken due care to look, have seen and heard the approaching car. If he was driving at a fast trot, he was equally negligent. To drive out of a cross-street and across a street car track at a fast or reck-

less gait is in itself negligence which will bar a recovery. Under this state of facts, both decedent and appellant being negligent, the question is, what was the proximate cause of the injury? What are the circumstances but for which the accident would not have happened? This involves an inquiry as to the relative rights of the drivers of vehicles and street cars. These rights are mutual and reciprocal. Each must have a due regard for the rights and safety of the other. Street cars, being operated upon fixed tracks, have in a sense a right of way over that part of the street upon which the tracks are laid. *Pantages v. Seattle Elec. Co.*, 55 Wash. 453, 104 Pac. 629. The motorman is entitled to act upon the assumption that a driver or a pedestrian will exercise due care for his own safety. It is not necessary for him to stop the car until he sees that the other is in apparent danger. *Duteau v. Seattle Elec. Co.*, 45 Wash. 418, 88 Pac. 755. And further, that traffic going parallel with a car track will not turn abruptly in front of a moving car. This we held in the recent case of *Briscoe v. Washington-Oregon Corporation*, 84 Wash. 29, 145 Pac. 995. We there said:

"By the great preponderance of the evidence, both for the appellant and for the respondent, it was shown that the appellant, without any care for his safety, drove his automobile upon the street car track immediately in front of the moving street car. Not only by the great weight of the evidence of the witnesses, of whom there were several, was this fact shown, but all the circumstances tended to show that the appellant carelessly and negligently drove his automobile in front of the approaching car, and that there was no time for the street car to be stopped and the accident avoided. The negligence of the plaintiff was clearly established. The only negligence claimed against the street car company was that the car was traveling at an excessive rate of speed. But whether it was or not, there was nothing in front of the appellant to obstruct his view. The street was open; the street car was in plain sight upon the track; and there can be no

doubt of the fact that the proximate cause of the accident was the plaintiff's own negligence."

It was the duty of Arpagaus to look, to take some care for his own safety. It was his duty, also, knowing that the street car moved on fixed tracks, to drive straight across the track and then turn to the west on Broadway and then north into Walnut street. If he had done so, the accident would not have happened, for the testimony shows without question that he had gone a greater distance to the west or the northwest than he would have gone had he crossed the street as he should. Instead of doing that, he moved in a way that would naturally induce the belief that he intended to keep his course west, or intended to allow the car to clear him on his right. Arpagaus was traveling west on the wrong side of the street or making a cut diagonally to make the jog in Walnut street. Whichever it was, he was not in the place where the law of the road or common prudence required him to be. Such conduct was condemned in *Gifford v. Washington Water Power Co.*, 85 Wash. 341, 148 Pac. 11. Moreover, the physical facts give added weight to the conclusion that Arpagaus turned his team in front of the car so abruptly as to make the accident inevitable. The "off-horse," the one on the right side, was struck on the side just behind the shoulder. It was the judgment of the officer who arrived soon after the accident that the ribs were broken. The other horse was not hurt. The wagon was not materially injured; it was not put out of commission. A step on the hound was bent. The brake rod and guard were also slightly bent. The horses were pushed ahead a distance of thirty to sixty feet, as the distance is estimated by the witnesses, while the car was being stopped. Scars on the side of the car indicate that the slight damage to the wagon came from this contact and not from the first impact, which, as we have said, must have been received by the horse.

It seems to us that the case falls within the rule announced in *Stueding v. Seattle Elec. Co.*, 71 Wash. 476, 128 Pac.

1058; *Slipper v. Seattle Elec. Co.*, 71 Wash. 279, 128 Pac. 233, and *Bowden v. Walla Walla Valley R. Co.*, 79 Wash. 184, 140 Pac. 549. Counsel seeks to distinguish the first two of these cases by saying that they are a "pedestrian case." We do not understand that pedestrians are held to a higher primary duty to exercise due care for their own safety than are drivers of vehicles. In either case, if the facts show a want of due care but for which the accident would not have occurred, a plaintiff cannot recover.

Neither does the case fall within the rule of wilful and wanton injury, the rule announced in *Gladen v. Seattle*, 83 Wash. 412, 145 Pac. 418. In such cases a recovery is allowed because of evidence that the defendant knew, or should have known, the situation of the plaintiff, and should have controlled the agency in his keeping until the plaintiff had extricated himself. Such a case would be presented if Arpagaus had been driving on the track. His danger would then have been known and appreciated. Until the moment of the collision there was nothing, at least nothing appears in the testimony, to indicate that Arpagaus intended to pull across the track. Some of plaintiffs' witnesses testify that, in their judgment, the front of the car hit the hub of the right front wheel. These witnesses were one hundred feet or more from the place the accident occurred; but if we grant that the car did strike the wagon, it only emphasizes the fact that Arpagaus, after proceeding west on the wrong side of the street, made a square turn in front of the street car at a time when it was in hearing and seeing distance. The testimony will not sustain an inference that the motorman should have anticipated any danger to Arpagaus until he started across the track.

Respondents rest their case, and seek to distinguish our many decisions, upon the premise that Arpagaus was driving squarely across the track, whereas, it is certain that he was going west on the wrong side of the street until he abruptly turned. His own conduct was an invitation to the street car

to pursue its way, or, if not, if he had taken any precaution he could have seen or heard the car. Like in the case of *Helliesen v. Seattle Elec. R. Co.*, 56 Wash. 278, 105 Pac. 458, if he had been slower by a few seconds he would have driven his team into the side of the car.

These cases are unfortunate, but we cannot measure the law by the consequences of the accident. Had the horse alone been killed, or the damage to the wagon been all the injury sustained, we think it would not be seriously contended that a recovery ought to be sustained.

Our conclusion is that the accident would not have occurred but for the contributory negligence of the deceased.

MORRIS, C. J., MOUNT, and PARKER, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. I think the question of whether deceased was guilty of contributory negligence, under the facts recited in the majority opinion, clearly demonstrates that that question was one of fact for the jury, and cannot be resolved as a question of law for the court.