[No. 14828. *En Banc.* November 19, 1918.]

CARL JOHANNESSEN, *Respondent,* v. WASHINGTON WATER POWER COMPANY, *Appellant.*[1]

STREET RAILROADS (30) — OPERATION — ACTIONS FOR INJURIES — CONTRIBUTORY NEGLIGENCE OF PEDESTRIAN—QUESTION FOR JURY. The contributory negligence of a pedestrian struck by an interurban train is a question for the jury, where he looked and saw no train for a distance of 1,500 feet, and walked parallel with the track 140 feet, and started to cross without again looking (MOUNT and MACKINTOSH, JJ., dissenting).

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 4, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by an electric train. Affirmed.

*Post, Russell & Higgins,* for appellant.

*H. M. Stephens* and *William S. Lewis,* for respondent.

TOLMAN, J.—This action was brought by the respondent to recover damages for personal injuries which he received by being struck by an interurban electric train operated by the appellant, at the intersection of Tenth avenue (there commonly known as Sunset Boulevard) and "D" street, within the corporate limits of the city of Spokane, on October 9, 1916.

[1]Reported in 176 Pac. 8.

The appellant has a double track car line extending from the central portion of the city southwesterly to the place of the accident and beyond, over which it runs a street car commonly known as the Garden Springs car, and also its Medical Lake and Cheney interurban cars. All west-bound street and interurban cars outward bound run on the north track, and all east-bound cars run toward the city on the south track. At the place of the accident, the double track car line occupies the center of Tenth avenue, or Sunset boulevard, which center part of the street occupied by the tracks is unpaved; and on each side of the unpaved portion of the street containing the tracks is a paved roadway approximately twelve feet in width, with a six-inch curb on the outside next to the sidewalk line, and a four-inch curb on the inside next to the car tracks. There are no sidewalks along this street in the vicinity of the place of the accident, and the paved roadway is commonly used by pedestrians as well as vehicles.

Shortly before the accident happened, the Garden Springs street car, used by the residents of the vicinity in going to and coming from the city, had gone out on the north track toward Garden Springs; and, at the time of the accident, was returning, though still distant a block or so from the point where the accident occurred, which point was the usual and customary place for persons in that vicinity to board the street car.

Respondent is a man seventy years of age and, on the morning of the accident, was in good health and in possession of all of his faculties. He resides east of the city of Spokane, and early that morning had come into Spokane and taken the Garden Springs car to the place of the accident, where he had alighted

from the car and gone to call upon his daughter, who resided in the immediate vicinity. Shortly before 10 a. m., the respondent, carrying a small satchel in his hand, left his daughter's house to take the Garden Springs car for the purpose of returning to the city. Walking down the path from his daughter's house, accompanied by his daughter and another lady, the respondent reached the curb on the north side of Tenth avenue at a point about 140 feet east and some twelve feet north from the place of the accident. He stopped at the six-inch curb and looked to his left down Sunset boulevard in the direction from which outbound cars would come, and had an unobstructed view of the double tracks for a distance of something like fifteen hundred feet, and he testifies that no car was then in sight. His daughter and her companion also looked and saw no car. Leaving the women, the respondent walked in a southwesterly direction across the north paved portion of the street toward the four-inch curb next to the north car track, and while so proceeding across the driveway, a man in an automobile going toward the city on the south side of the street asked him to ride. The respondent stopped, declined the invitation, and again looked to the left, but saw no car then in sight. He then continued to walk toward the curb next to the north car track until somewhat past the center of the paved driveway, and then turned and walked along the driveway towards "D" street at a distance of two or three feet from the four-inch curb, but approaching nearer to the curb as he neared the intersection of "D" street, for the purpose of permitting west-bound traffic to pass him from behind. Respondent pursued this course until he had passed beyond the end of the curb and into the paved crossing at the intersection of "D" street.

Then, without looking for the approach of the car, he turned and took a step or two to the left for the purpose of crossing to the south side of the south track, there to take the inbound Garden Springs car, and, according to his testimony, was about to the north rail of the north car track when he was struck by the appellant's interurban train.

It is alleged that the interurban train was running at a speed in excess of twenty miles an hour and in violation of a city ordinance which is pleaded. The evidence is conflicting as to whether or not the train was running in excess of twenty miles an hour; and the evidence is also conflicting as to whether or not any warning was given by the motorman of the interurban train by sounding a bell or whistle.

At the time and place of the accident, there was nothing to obstruct the view in any direction of either the respondent or the motorman. The motorman testifies that he saw the respondent at a distance of at least six hundred feet; that the respondent was walking parallel with the track outside the danger zone; that the bell was rung for the crossing as usual at a distance of about one hundred and fifty feet from the place of the accident, was rung again at a distance of about twenty feet, and that as the car came within about twelve feet of the respondent he turned toward the track, when the motorman again rang the bell, threw on the emergency brakes and shouted to the respondent, but the means then used were insufficient to avoid the accident.

The appellant admits on oral argument that, upon the question of excessive speed and upon the question of whether or not the bell was sounded, there was sufficient evidence to go to the jury, but claims that it affirmatively appears that the respondent was guilty

of contributory negligence *per se*. At the close of the respondent's case, the appellant challenged the sufficiency of the evidence and moved for judgment, which motion was denied; and at the close of the entire case, the appellant renewed its challenge and motion. These motions were denied and an exception taken. The jury returned a verdict in favor of the respondent, and the appellant thereupon made a motion for judgment notwithstanding the verdict, and also made a motion for a new trial, both of which were denied and exceptions taken. A judgment was entered on the verdict, from which this appeal is prosecuted.

It is not difficult to state a general rule of what is or is not contributory negligence, but frequently it is extremely difficult to apply a general rule to the specific facts, and in doing so it is not strange that some confusion appears to have arisen among the decisions of this court.

Among the earlier leading cases, the one most frequently cited is *Roberts v. Spokane St. R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184, in which this court said:

"It is not negligence *per se* if it is not shown that one looked and listened in crossing a street railway. The degree of care required in crossing a highway and steam railway, in looking up and down the track, is not necessarily the test of care required in crossing the track of a street railway in a public street. Failure to look and listen before crossing the tracks of an electric railway in a public street, where the cars have not the exclusive right of way, is not negligence as a matter of law." (Citing cases from other states.)

In *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284, the court, at page 237, said:

"The obligations of the operator of the car and his (respondent's) obligations were mutual. Each was

obligated to look out for the other, and govern his movements accordingly.''

In *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214, in which the facts were quite similar to those in the case at bar, the court said:

''Conceding that the record as it stands shows that no gong was rung, still respondent urges that appellant was so palpably guilty of gross contributory negligence, as a matter of law, it should be held he cannot recover. It is true, it does not appear that he looked or listened for the approach of a car, and in turning to cross the respondent's track he did not turn in the direction from which he knew a car upon that track must come. It has been held by this court that failure to look or listen at a street railway crossing does not constitute negligence *per se*. *Roberts v. Spokane Street Ry. Co.*, and *Traver v. Spokane Street Ry. Co.*, *supra*. A distinction is made in those cases between the rule which applies to a street railway crossing and that which applies to the crossing of an ordinary railroad, the reason being that a railroad company has a proprietorship in its right of way, and that a greater degree of care is required at a crossing of its tracks than is required at the crossing of a street railway track, the owner of which has no proprietorship in the street, and has only a right upon the street in common with other travelers thereon. The above distinction is supported by the weight of authority. Following the above named cases it must be held here that the mere failure of appellant to look or listen was not negligence as a matter of law, but it is a question to be submitted to the jury whether, when considered in connection with all other surroundings in this case, it constituted negligence in fact. The jury might have found that it was appellant's duty, under his peculiar surroundings, which were well known to him, to turn toward the direction from which the car came and look, or that he at least should have listened. Again, they might have found that circumstances and surroundings were such as did not charge him with that duty. Under the record they might

also have found that the failure to ring the gong was negligence, and that, if the gong had sounded the alarm, appellant might have heard it in time to have protected himself. These are questions which, we think, must be submitted to the jury. Under our system of jurisprudence the jury is constituted the functionary which must pass upon these questions of fact. It is not a question of what may be our individual opinions as to the facts shown by the record. The law casts that duty upon the jury as a distinct and auxiliary branch of the court, and unless the evidence shows negligence on the part of the appellant as a matter of law, it is his right to have the facts submitted to a jury. This court has held that generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and that it is only in rare cases that the court is justified in withdrawing it from the jury; that there may be cases where the circumstances are such that the standard of duty is fixed and the measure of duty defined by law, and is the same under all circumstances; and again, that the facts may be undisputed, and may be such as prevent more than one reasonable inference being drawn from them. If, however, different results might be honestly reached by different minds, then negligence is not a question of law, but is one of fact for the jury, and before the court will be justified in taking from the jury the question of contributory negligence the acts done must be so palpably negligent that there can be no two opinions concerning them. *McQuillan v. Seattle,* 10 Wash. 464 (38 Pac. 1119, 45 Am. St. Rep. 787); *Steele v. Northern Pac. R. Co.,* 21 Wash. 287 (57 Pac. 820); *Traver v. Spokane St. R. Co., supra.* The above principle we believe is sustained by the weight of authority. It has, in any event, become the settled doctrine of this court.''

And the cases of *Chisholm v. Seattle Elec. Co.,* 27 Wash. 237, 67 Pac. 601, and *Niemyer v. Washington Water Power Co.,* 45 Wash. 170, 88 Pac. 103, are in

harmony with the decisions just referred to, and recognize the rule of reciprocal duty.

What appears to be a divergence from the rule so far followed occurs in *Helliesen v. Seattle Elec. Co.,* 56 Wash. 278, 105 Pac. 458, where, after discussing the previous cases, the court said:

"Did the pedestrian, under all the circumstances, use such a degree of care, caution and prudence as an ordinary, prudent and careful pedestrian would use under like circumstances?"

This is the rule which the court has attempted to follow in some of the later cases, but in doing so it has nowhere repudiated the doctrine of reciprocal duties. See *Fluhart v. Seattle Elec. Co.,* 65 Wash. 291, 118 Pac. 51; *Slipper v. Seattle Elec. Co.,* 71 Wash. 279, 128 Pac. 233; *Stueding v. Seattle Elec. Co.,* 71 Wash. 476, 128 Pac. 1058; *Bardshar v. Seattle Elec. Co.,* 72 Wash. 200, 130 Pac. 101; *Beeman v. Puget Sound Traction, L. & P. Co.,* 79 Wash. 137, 139 Pac. 1087; *Arpagaus v. Washington Water Power Co.,* 86 Wash. 83, 149 Pac. 346; *Jones v. Wiese,* 88 Wash. 356, 153 Pac. 330; *McEvilla v. Puget Sound Traction, Light & Power Co.,* 95 Wash. 657, 164 Pac. 193.

In a number of these cases, referring to the particular facts in the case then under consideration, the court has said that the pedestrian must use his senses, which seems to limit and narrow the look and listen rule; for surely, if one uses neither the sense of sight or hearing, it is not reasonable to suppose that the use of his other senses will protect him from colliding with a moving street car. In these cases calling for the use of the senses, the court either found facts which created in each case an exception to the earlier rule, or else encroached upon that rule, perhaps un-

consciously, as the earlier cases have been cited and referred to from time to time, and no departure appears to have been intended.

In the *Beeman* case, *supra*, JUDGE CHADWICK, speaking for the court, said:

"Whether a pedestrian should have known of the approach of a street car would no doubt be, in almost any conceivable case, a question for the jury; but when admitting that he knew it, there is a duty—not a duty owing to another, but a duty owing to self— to keep in mind the fact that a car is approaching."

There was evidence in this case from which the jury may have found that the motorman, for a distance of fifteen hundred feet or more, could and did see the respondent, and must have known that he was walking with his back toward the approaching car, in close proximity to the tracks, and likely any moment to step into danger. The jury may have found from the evidence that the respondent was wholly unconscious of the approach of the car until the instant that it struck him; indeed, that seems admitted. And there was evidence also from which the jury may have found that the car was proceeding at an excessive rate of speed and that no warning was given. It is argued here, and may have been argued to the jury, that, when respondent looked for the approach of a car when he was at a point one hundred and forty or one hundred and fifty feet from the place of the accident, he could see the track for such a distance that it was prudent to believe he could reach and cross the tracks at "D" street before any car traveling at a lawful rate of speed could reach him; and that, at any rate, an approaching car would give abundant warning. Can we say that reasonable minds cannot differ as to whether or not the respondent should have known of the approach of the car, or again looked before entering

the danger zone? In view of the reciprocal duties of the parties, we think it is a question for the jury, even under the restricted rule (if there be such), to say whether or not respondent, under all the circumstances, acted as an ordinarily prudent person would act under like circumstances. The arguments made to us by both sides seem to be proper arguments to be made to the jury upon this question, and we think the trial court properly submitted it to the jury under the authority of the following: *Bemiss v. Puget Sound Traction, Light & Power Co.*, 89 Wash. 239, 154 Pac. 171; *O'Brien v. Washington Water Power Co.*, 71 Wash. 688, 129 Pac. 391; *Peterson v. Seattle Elec. Co.*, 71 Wash. 349, 128 Pac. 650; *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351; *Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534; *Mallett v. Seattle, Renton & Southern R. Co.*, 66 Wash. 251, 119 Pac. 743.

We find no error in the instructions given to the jury.

The judgment will be affirmed.

MAIN, C. J., FULLERTON, PARKER, MITCHELL, and HOLCOMB, JJ., concur.

CHADWICK, J., concurs in the result.

MOUNT, J. (dissenting)—I cannot agree to the conclusion reached by the majority. The facts are to the effect that the respondent was walking along a paved boulevard parallel with the street railway tracks. The portion of the street containing the double track railway was the ordinary graveled street, with ties and rails. There was a curb four inches high separating the paved roadway from the car tracks. The respondent was walking leisurely along the paved roadway a couple of feet distant from the curb and

parallel with the railway tracks. He was possessed of all his senses. His hearing and eyesight were good. There was nothing upon the street to distract his attention. While the place where he was injured was within the city limits, it was practically in the country. There was no traffic near. While he was thus walking, he came to "D" street, which was a paved crossing over the railway tracks. When he came to this crossing he started across the tracks. As he turned to his left and was about to step upon the tracks, the corner of the street car struck him upon the left shoulder and injured him.

I think the majority of the court will agree that, if the respondent had been traveling at right angles to the boulevard for the distance of one hundred and forty feet and came to the street car track and attempted to step upon the track immediately in front of the street car, he would have been guilty of such negligence as to preclude a recovery, because, coming for that distance at right angles to the street car track, he, of necessity, must have seen the street car approaching, even at an excessive rate of speed, and if he had walked upon the track in front of the car, he would have been guilty of the grossest negligence; but, because he was walking parallel with the track, had looked down the track when he first came upon the street and saw no car coming at a distance of fifteen hundred feet, and because he walked parallel with the street car track up to "D" street crossing, a distance of one hundred and forty feet, and then turned to his left to cross the track, and was struck by the car, the majority say that this made a question for the jury. If the respondent had been an instant later he would have walked into the side of the street car as it passed him. If he had been an instant earlier

he would have stepped immediately in front of the moving car.

It seems that a man with all his senses, walking a distance of two or three feet from a street car track, and parallel with it, when a car is approaching so closely behind that the instant he attempts to step upon the track, and does not see the car or hear it, and is struck by the car, he is clearly guilty of negligence. It is conceded in this case that the respondent attempted to step upon the railway track immediately as the approaching car came to him. The car was certainly making some noise. The respondent was walking leisurely along beside the track and there was nothing to distract his attention. No other car was within sight and no other conveyance was upon the street, and he must, therefore, have heard the car coming behind him. He must also have made a slight turn to the left in order to change his course so as to cross the track. A mere glance would have shown him that the car was upon him. Under these circumstances, the respondent, as a matter of law, was guilty of negligence which was the primary cause of his injury, and therefore should not be permitted to recover. I therefore dissent.

MACKINTOSH, J., concurs with MOUNT, J.