[No. 12408.   Department One.   April 29, 1915.]

MARJORIE GIFFORD, *Respondent*, v. WASHINGTON WATER
POWER COMPANY, *Appellant*.[1]

DAMAGES—PERSONAL INJURIES—FUTURE SUFFERING.  Evidence of
physicians to the effect that an injury causing a depression in the
skull of a young child would probably in the future cause epilepsy,
paralysis, convulsions or pains and nervousness is inadmissible as a
speculative conclusion as to possible consequences, rather than evi-
dence of consequences reasonably certain to ensue from the injury.

STREET RAILROADS—INJURIES — COLLISIONS — NEGLIGENCE — SPEED
LIMIT—ISSUES AND INSTRUCTIONS.  In an action for personal injuries
sustained in a collision between an automobile and a street car, al-
leged by plaintiff to have been exceeding the city speed limit, in
which there was a conflict in the evidence on that point, but no evi-
dence of any unusual conditions, and the facts tended to show that
the motorman had a clear right of way and was authorized to run
within the speed limit fixed, it is error to instruct that the railway
company was guilty of negligence, although not exceeding the limit,
if the street car was running at a greater speed than an ordinarily
careful person would have operated it under the circumstances and
conditions.

Appeal from a judgment of the superior court for Spokane
county, Webster, J., entered June 11, 1914, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained through a collision between an
automobile and a street car.   Reversed.

*Post, Avery & Higgins*, for appellant.

*Plummer & Lavin*, for respondent.

MOUNT, J.—The plaintiff, a female child of the age of
about three years, was riding in the rear seat of an automo-
bile driven by one George E. Bartoo, going east along York
avenue, in the city of Spokane.   York avenue runs east and
west and crosses Monroe street, which runs north and south,
in a residential portion of Spokane.   When the automobile

[1] Reported in 148 Pac. 11.

came to Monroe street, Bartoo, thinking that he could not cross ahead of the street car, which was traveling south on Monroe street, turned north on the left-hand side of Monroe street, and collided with the street car of the defendant. The right front wheel of the automobile struck the right front corner of the street car. The child was injured, and later brought this action, by guardian *ad litem*, to recover for the injury. The case was tried to the court and a jury, and resulted in a judgment for $2,000. The defendant has appealed.

The complaint alleges:

"That said car was being negligently run and operated at an excessive, dangerous and unlawful rate of speed . . . That the defendant, its agents, servants and employees were further negligent in the operation of said car in failing to control the same and to regulate the speed thereof . . ."

It was conceded at the trial that the rate of speed which street cars in this part of the city might be operated under city ordinances was fifteen miles per hour. When the street car and the automobile collided, the plaintiff was injured about the head and face. At the trial, the plaintiff claimed that the head injury, which appeared to be a depression near a suture of the head back of the right ear, would at some time in the future cause the plaintiff to have epilepsy, paralysis, convulsions, severe periodical pains, and general nervousness. Testimony of two physicians upon this subject was admitted over the objection of the defendant. The court denied the objection, and a motion to strike at the time it was made, saying: "I will overrule the motion for the present." At the close of the evidence, the court denied the defendant's motion to strike the evidence, and the appellant assigns this ruling as error.

Dr. Hoag, a physician called by the plaintiff, testified, among other things, as follows: After describing the depression found on the head of the child:

"Q. What would that pressure produce there at the present time or sometime in the future, in all reasonable probability? A. Well, there is a probability or possibility of its producing—bringing on epilepsy. The Court: I didn't hear that. A. There is a possibility for its bringing on epilepsy in later life."

Thereafter, on cross-examination, the doctor upon this question testified:

"Q. I notice that you changed the word, when you were asked as to the possibility of troubles arising from depression of the skull at this point, you started in by saying 'probably' and then changed it to 'possibility' of epilepsy; that is correct isn't it? A. Well, I did not intentionally. Q. What? A. I didn't intentionally change it. Q. You meant to say possibility all the time, didn't you; you didn't mean to say probability? A. Well, there is a probability of it and a possibility of it. Q. There is a probability and a possibility? A. I suppose there is. Q. What? A. I suppose so. I think you could class it that way. Q. What is the difference between a probability of epilepsy and a possibility of epilepsy? A. Well, if you would say it was probable you would mean that there would be very little chance that it would not occur, I suppose; and if you would say it was possible, it might occur and might not. That would be my definition of the difference. Q. You say if it was probable there would be but very little chance that it would not occur? A. Yes, if you would say probably there would not be much chance but what it would occur. Q. That is what you mean in this case, is it? A. Well, I would not hardly make it that strong. I would say that you cannot tell whether it will or not. There is a chance that it will and a chance that it wont."

Dr. Nelson testified in behalf of the plaintiff upon this question as follows:

"Q. . . . I want to know what you as a physician, examining this child, assuming there is no lawsuit here, and you were not a witness, you would examine that child and see that head and that scar there, considering the pains that have been testified to, that the child has endured from earache and headache and all that, and just diagnosing the case,

considering the child's head will develop with age, what would
you in all reasonable probability expect as the result of that
head injury, from the accident, which it now indicates? A.
I would probably expect paralysis, convulsions—or convul-
sions or severe periodical pains in the head and possibly—
Q. Leave out the word 'possibly,' doctor. I don't care about
that. A. All right. Q. Just what in your opinion you
would expect, quite possible? A. General nervousness."

And on cross-examination upon this question, Dr. Nelson
testified as follows:

"Q. But when the child gets well and is in apparently
perfect health, bright, smart, and a clever little girl four or
five years old, a year and a half or two years afterwards,
that you know, don't you, that no injury has happened to
that brain? A. Yes, sir, I know there is no injury hap-
pened to the brain so far. Q. Yes, that is what I thought.
And it is not your opinion, is it, doctor, that there ever will
be any injury to the brain? A. Well, there possibly may be.
Q. Yes, but you, as a doctor, would not say to this jury
that is your opinion that there ever will be an injury to the
brain? A. Well, I could not say that in my opinion that
there would not be, either."

It is apparent from the whole testimony of the doctors
that neither of them intended to say that any serious re-
sults were reasonably certain to appear from this head in-
jury. The rule is well settled by numerous decisions that
future consequences which may presently be recovered for
must be such consequences as are reasonably certain to en-
sue. The rule is well stated in *Strohm v. New York, L. E. &*
*W. R. R. Co.*, 96 N. Y. 305, where the court says:

"Future consequences which are reasonably to be expected
to follow an injury, may be given in evidence for the pur-
pose of enhancing the damages to be awarded. But to en-
title such apprehended consequences to be considered by the
jury, they must be such as in the ordinary course of nature
are reasonably certain to ensue. Consequences which are
contingent, speculative or merely possible, are not proper
to be considered in ascertaining the damages. It is not
enough that the injuries received may develop into more

serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle a plaintiff to recover present damages, for apprehended future consequences, there must be such a degree of probability of their occurring, as amounts to a reasonable certainty that they will result from the original injury."

See, also, *L'Herault v. Minneapolis*, 69 Minn. 261, 72 N. W. 73; *Tozer v. New York Cent. & H. R. R. Co.*, 105 N. Y. 617, 11 N. E. 369; *Briggs v. New York Cent. & H. R. R. Co.*, 177 N. Y. 59, 69 N. E. 223, 101 Am. St. 718; *Galveston, H. & S. A. R. Co. v. Powers*, 101 Tex. 161, 105 S. W. 491; *Brininstool v. Michigan United Rys. Co.*, 157 Mich. 172, 121 N. W. 728; *Gallamore v. Olympia*, 34 Wash. 379, 75 Pac. 978.

We are satisfied that this is the correct rule. And also that the conclusions of these two physicians were clearly speculative and had reference only to possible consequences, and not to consequences that are reasonably certain to accrue. We are satisfied, therefore, that the court erred in refusing to strike this evidence from the record, and in permitting it to be considered by the jury.

In the course of the trial the court gave the following instruction:

"If you find by a preponderance of the evidence that at the time and upon the occasion in question the defendant company was guilty of negligence in operating its car at the rate of speed you find from the evidence it was being operated at, in view of all the facts, circumstances and conditions shown by the evidence in the case, whether running in excess of fifteen miles per hour, or not; that is to say, if you find from the evidence that the defendant company, at the time and upon the occasion in question, was operating its car at a greater rate of speed than an ordinarily careful and prudent person would have operated said car, having regard to the safety of life and limb of others in their enjoyment of the same street, under the same circumstances and conditions as shown by the evidence in this case, and that such negligence, if any, on its part, was the proximate cause of the

plaintiff's injuries, if any, as the term 'proximate cause' has been herein defined to you, then your verdict should be for the plaintiff. . . ."

The contention of the respondent was that the car was being operated at an excessive rate of speed. The city ordinances of Spokane permit cars in this vicinity to operate at a speed of 15 miles per hour. This instruction, in effect, tells the jury that they can find for the plaintiff whether the car was running in excess of 15 miles per hour or not if, under the circumstances in evidence, the jury found that the car was not being operated as a careful and prudent person would operate it.

As an abstract proposition of law, this instruction might not be erroneous. But in this case, it was conceded that the rate of speed of street cars in this vicinity was 15 miles per hour. The respondent attempted to show that the street car was running in excess of 15 miles per hour, while the appellant's witnesses estimated that it was running less than 15 miles per hour, and was stopped within its length after being run into by the automobile. The evidence fails to show that there were any unusual conditions at the time and place of this accident. The street car was running south on Monroe street. This is a paved street fifty feet wide between the curbs, and upon it were laid two parallel street car tracks in the middle of the street. There were no persons upon the track or upon the street at that point, and no persons within view of the car, except one person who was driving a horse and buggy some distance ahead of the car. There were two wagons in York avenue to the west of Monroe street, but these wagons were not visible to the approaching street car, and were not traveling toward Monroe street. The automobile in which the plaintiff was injured was traveling east on York avenue toward this crossing. Instead of going straight ahead, or turning to the right in order to avoid the street car, the driver of the automobile, thinking that he could not cross ahead of the street car, and instead of having

his automobile under control, attempted to turn to the left, in violation of the city ordinance, and by reason thereof ran into the corner of the street car. If there had been persons upon the crossing, the instruction might have been pertinent to the case. But in view of the fact that the motorman upon the street car had apparently a clear way and nothing to obstruct his progress, it is clear, we think, that he was authorized, under these conditions, to run within the limits fixed by the ordinance, without being guilty of negligence. In *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488, we said:

"If the motorman sees a clear track and has no occasion to stop and no reason to anticipate danger to another, it would not be negligence to maintain the usual rate of speed, even over a crossing. But if he sees, or ought to see, persons or vehicles thereon, not able to get out of his way readily, it would certainly be negligence not to have such control of his car as to be able to stop before reaching such crossing. This case is one where there appeared to be no occasion for stopping at that time."

We think that rule is applicable to this case. It was, therefore, error to tell the jury that they might find for the plaintiff if the street car was running within fifteen miles per hour. It was as much the duty of the automobile to keep out of the way of the street car as it was for the street car to keep out of the way of the automobile.

For both these errors, the judgment is reversed and the cause remanded.

Morris, C. J., Holcomb, Parker, and Chadwick, JJ., concur.