[No.. 6505.   Decided April 6, 1907.]

EDWARD M. HALL, *an Infant, by His Guardian ad Litem Ellen M. Hall, Appellant,* v. WASHINGTON WATER POWER COMPANY, *Respondent.*[1]

STREET CARS—NEGLIGENCE—CONSTRUCTION OF TRACKS—RIGHT OF WAY—INSTRUCTIONS. In an action by a bicyclist who fell in front of an approaching street car, by reason of the alleged negligent construction of cross-over tracks, it is not error in instructing that the street car company had the preference right of way over its tracks, to state that consequently it was plaintiff's plain duty to avoid being on the track.

Appeal from a judgment of the superior court for Spokane county, Huncke, J., entered March 16, 1906, upon the verdict of a jury rendered in favor of the defendant, in an action by a bicyclist to recover damages sustained in being run over by a street car.   Affirmed.

*Allen & Allen,* for appellant.

*H. M. Stephens,* for respondent.

MOUNT, J.—Action for personal injuries.   On a trial of this case in the court below, the jury returned a verdict in favor of the defendant.   The plaintiff appeals.

[1]Reported in 89 Pac. 553.

On July 16, 1903, the defendant was operating a double track street railway line across the Monroe street bridge, in the city of Spokane. This bridge was about one thousand feet in length, and extended north and south across the Spokane river. The bridge was constructed with a roadway about forty feet wide. The street railway tracks were located on each side of the center line of the bridge, and the distance between the two tracks was four feet ten inches. The rails of the tracks were four feet eight and one-half inches apart. The vehicle roadways on each side of the bridge, and on each side of the space occupied by the railway tracks and clear of the outer rails thereof, were about twelve feet six inches wide. The body of the cars operated upon the tracks extended outside of the rails about twenty inches. Near each end of the bridge, about seventy-five feet therefrom, the street car company had placed a cross-over track from one track to the other, so that cars might use only one of the double tracks while the bridge was being repaired. On the date above stated, the plaintiff, a boy of eleven years of age, was riding a bicycle across the bridge from the north to the south. He was riding in the center of the bridge between the double tracks. The railway company on that day was using both of the tracks, the easterly track for north-bound cars and the westerly track for south-bound cars. When the plaintiff went upon the bridge at the north end, he passed a car going south in the same direction he was traveling. He was traveling faster than the car. When he got near to the south end of the bridge about where the cross-over track was, he saw a north-bound car about seventy-five feet away, coming toward him. He testified that, when his wheel came to the rail of the cross-over track, he was thrown upon the westerly track and was rendered unconscious, and remained in that condition until the north-bound car came up to him and the fender thereof struck him; whereupon he regained consciousness and caught the fender with his hands, and was dragged about thirty feet, with the front wheel of

the car upon his right foot; that the car was then stopped, and he was taken from under the car and to a doctor's office, where his right foot was amputated between the ankle and the knee; that when he fell, there was nothing between him and the approaching car, and that he was in plain view of the motorman. There was other evidence tending to corroborate all these statements of the plaintiff.

The defendant's evidence and contention was to the effect that the boy was just in front of the car and very close to it when he fell, and that he fell immediately against and under the car; that the car was running at no greater speed than three miles per hour, and was immediately stopped within seven feet after the boy fell. In view of the findings of the jury and the evidence, we think this was the fact of the case. The negligence alleged was that the defendant maintained these cross-over tracks so that the rails were about two inches above the planking of the bridge, and also that the motorman ran his car seventy-five feet and upon the boy while he was prostrate upon the track in plain view. These allegations of the answer were denied, and the evidence was in direct conflict upon them.

Appellant's first assignment is that the court erred in giving the jury the following instruction:

"At the time the accident occurred both plaintiff and defendant, in common with the public generally, had an equal right to the safe and reasonable use of the highway where the accident occurred, with this difference that the defendant, being confined by the nature of its occupancy to these tracks, had the preference and superior right to the reasonable use of such tracks at the time and place of the accident, and consequently it was plaintiff's duty to avoid being on the track or so close to it as to be in danger from the moving car."

It is claimed that the last part of this instruction, beginning with the words "and consequently," is erroneous, because it in effect tells the jury that the boy had no right upon the track, although he had been thrown there by his bicycle

14—46 WASH.

striking the cross-rail. The instruction is not reasonably susceptible of the construction which appellant seeks to give it. All the court meant was what was said, viz., that both had an equal right to the reasonable use of the street at that point. Of course, both could not safely and reasonably occupy the street at that place at the same time. The street car could not leave its fixed rails. The plaintiff could ordinarily do so readily. It was therefore his duty to avoid the approaching car and keep a safe distance from it. *Helber v. Spokane Street R. Co.*, 22 Wash. 319, 61 Pac. 40; *Traver v. Spokane Street R. Co.*, 25 Wash. 225, 65 Pac. 284.

In the last-cited case substantially this same instruction was approved. See page 243, instruction numbered 14. The court, of course, did not mean, and did not tell the jury, that if the boy was lying prostrate upon the track the car could be run over him; and this is made plain in a subsequent instruction, to the effect that it was the duty of the motorman in charge of the car to keep constant lookout in front of him to see that there were no persons in a position to be injured by the car; and if the plaintiff was thrown prostrate upon the track in front of the car, it was the duty of the motorman to use his emergency appliances in order to stop the car most quickly.

The appellant next argues that the court erred in refusing to give his requested instruction numbered 3, as follows:

"The jury are instructed that, even though they may find the plaintiff guilty of negligence in attempting to ride his bicycle across the cross-track under the circumstances, yet if they find that the motorman operating the car that caused the injury saw the peril in which the plaintiff was placed in time to have stopped the car by the use of ordinary care and diligence before it ran upon the plaintiff, and he failed to do so, then the defendant is liable to the plaintiff for the injury received by him."

And refusing to give No. 10, which is in substance the same as the one just quoted, except it uses the words, "If . . . the . . . . motorman by the use of reasonable care and

diligence ought to have seen" the plaintiff. But we find that the court gave these instructions in substance when he said:

"If you find by a preponderance of the evidence that the plaintiff himself was negligent, and that this negligence was the proximate cause of the injury, then he cannot recover, unless the defendant, having knowledge of the plaintiff's negligence, could by the use of ordinary care have prevented the injury, . . . and the plaintiff could not recover unless, as I have already said, the defendant knew or should have known of plaintiff's negligence, and could by the exercise of reasonable and ordinary care have prevented the injury."

These instructions fully covered the requested instructions, which is all that is required.

Several other errors are alleged for refusal to give requested instructions, but we find that all of them were given in substance. We do not deem them of sufficient importance to justify us in setting them out here. It is sufficient to say that the instructions given by the court fully and fairly cover the law of the case in all its aspects.

Appellant also complains because the court denied the motion for a new trial, made upon the ground of insufficiency of the evidence. We are satisfied the court did not err in this respect. If the appellant's contentions were true, that he fell from his bicycle upon the railway track seventy-five feet in front of a slowly approaching car, and that there was nothing to obstruct the view of the motorman while the boy was there prostrate and unable to get out of the way of the car, and it was carelessly and negligently run upon him and injured him, he was certainly entitled to recover, and the court so told the jury. On the other hand, if the facts claimed by respondent were true, that the cross-over tracks were only flush with the floor of the bridge, and reasonably safe for ordinary travel, and if the boy rode near the moving car and fell against it or immediately in front of it, and the emergency brake was used immediately upon the motorman's seeing the boy fall, and the car was stopped within seven feet,

but notwithstanding this diligence the boy was injured, the respondent was not at fault and was therefore not liable. There was sufficient evidence to go to the jury upon these several disputed questions of fact, and the jury found against the appellant. We are not disposed to reverse their findings under these conditions.

The judgment is therefore affirmed.

HADLEY, C. J., DUNBAR, CROW, and FULLERTON, JJ:, concur.