[No. 8160. Department One. November 2, 1909.]

ALEXANDER PANTAGES, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

EVIDENCE—OPINIONS—ADMISSIBILITY. It is error to permit a witness to give his opinion as to the competency of a person to drive an automobile, as the jury is capable of drawing the proper inferences from a statement of the facts.

STREET RAILROADS—COLLISION WITH AUTOMOBILE—NEGLIGENCE—INSTRUCTIONS. In an action for damages from a head-on collision of a street car and an automobile, it is error to refuse to give an instruction to the effect that the motorman had a right to assume, until the danger became imminent, that the automobile would turn off the track, where there was evidence that the automobile was skidding on slippery rails, that the driver could have stopped it any time within one hundred feet of the car, but took the chance of guiding it off and made no effort to stop until within ten or twelve feet of the car, especially where there was evidence that the car had come to a full stop before the collision.

Appeal from a judgment of the superior court for King county, Gay, J., entered February 20, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages sustained through the collision of an automobile and a street car. Reversed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*John E. Ryan*, for respondent.

CHADWICK, J.—Defendant owns and operates a double track street railway on Pike street in the city of Seattle. Pike street runs east and west. On December 3, 1907, there

[1] Reported in 104 Pac. 629.

was an excavation extending along the north side of the street. This excavation was made for the purpose of laying water pipes. On the south side of Pike street, where the travel east was accustomed to go, the water pipes thereafter to be laid were strung out. Mrs. Pantages, the wife of appellant, was driving a seven-passenger automobile in which her husband, her child, her chauffeur, and two others were riding. She came onto Pike street from Harvard avenue, and started west, taking the north or westbound car track. From this she turned onto the south or eastbound car track for the purpose, as she says, of allowing the westbound car to pass the automobile. Without stopping, she proceeded on her way west. By reason of the nature of the improvements mentioned, the tracks were slippery, and her car refused to obey her efforts to swing back to the westbound track. It skidded down the rails toward the approaching car, with which it collided at a point about midway between Terry and Boren avenues. Mrs. Pantages made no attempt to stop the automobile, other than to use the footbrake, apparently relying upon her ability to guide it off the track, until she was within ten or twelve feet of the street car, when she says she put on the emergency brake and stopped the automobile. She admits that she could have stopped it at any point within one hundred feet of the car. Plaintiff also testified that he stood up in his seat when about fifty feet distant, and shouted and waved at the motorman to stop, but that he did not heed the warning. The automobile was thrown into the ditch, plaintiff was slightly injured, and to recover for the damages to the machine and to himself, this action was brought, resulting in a verdict in favor of plaintiff. Defendant has appealed, alleging as error that the court erred in overruling a motion for a nonsuit and refusing to direct a verdict, and denying a motion for judgment *non obstante veredicto;* that the court erred in permitting one Ira D. Lundy to testify that Mrs. Pantages was a careful and capable driver; in refusing to give a number of requested

instructions; in overruling a motion for a new trial; and in rendering judgment against appellant and in favor of respondent.

We think there was evidence warranting the submission of the case to the jury, and this disposes of all the assignments of error going to that phase of the case. The assignment that the court erred in permitting the witness Lundy to testify as to Mrs. Pantages' competency as a driver of automobiles is well taken, and falls squarely within the rule announced in the very recent case of *Johnson v. Caughren,* *ante* p. 125, 104 Pac. 170, wherein other decisions of this court were reviewed, and the rule was finally declared in the following words:

"In the case at bar, any witness having an opinion on the question of incompetency of Ferguson to perform the duties for which he was employed, must have acquired it from observing his conduct, manner and actions while in the performance of his work, or from knowledge of his experience or lack of experience. These matters. could be related to the jury by the witnesses substantially as they were observed by the witnesses, and the jury was just as capable of drawing just inferences from them as were the witnesses themselves. This being so, it was the province of the jury to draw the inference, and it was error to let the witnesses draw it for them."

In this case the witness testified as follows:

"Q. Had you occasion to see anything of Mrs. Pantages' work? A. Yes, sir. Q. In handling an automobile? A. A number of times. Q. What can you say about her being a competent, careful driver? A. It was common talk that she was one of the best drivers— Mr. Tait (interrupting). Wait a moment. Q. (Mr. Ryan) You can't tell that. A. It is my judgment that she was one of the best drivers in the garage. Q. Careful? A. Careful. Q. And capable? A. Capable."

It will thus be seen that this case is controlled by the *Johnson* case, and the question of Mrs. Pantages' contributory negligence in the particular instance cannot be meas-

ured by the opinion of third persons as to her general competency.

The court was requested to give the following instruction:

"You are instructed that if you find that the motorman saw the automobile upon the track and there was nothing to obstruct the view of the occupants of the automobile of the approaching car, such motorman had a right to assume that the automobile would be turned off of the track and out of danger in time to avoid a collision, and the motorman had a right to indulge in such assumption until the danger of a collision became imminent."

This requested instruction clearly states the law of the case and should have been given. The right of the motorman to assume that one approaching on the track would move out of the way, until the danger becomes imminent, is nowhere covered in the court's instructions. Negligence is not to be presumed, and until the jury is satisfied by a preponderance of the evidence that the situation and extremity of another was such that the motorman, in the exercise of ordinary care and prudence, saw, or should have seen, the danger in time to avoid the accident, the motorman is entitled to the presumption that he is not guilty; and when a request is made, it is the duty of the court to instruct the jury as to his right to assume that the other party will perform his relative duty. This is but saying that the driver could, and under ordinary conditions should if possible, get off the track when a car is approaching, because the car cannot. A motorman owes a duty to the driver, but the driver owes an equal duty to the motorman and to the passengers in the street car. The theory of respondent is fully covered by the court, but against the evidence of the respondent appellant had offered an equal or greater number of witnesses, who testified that the street car had come to a full stop, while the auto came full head-on into it. This, taken in connection with Mrs. Pantages' admission that she could have stopped at any place within one hundred feet of the street car, but instead of doing this, clung to the hope that she might guide

it off the track in time to miss the car, made the requested instruction vital to appellant's case. She took the main chance, and may have misled the motorman into a belief that no danger was imminent. It seems to us that this case falls within the general rules announced in the following cases: *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284; *Hall v. Washington Water Power Co.*, 46 Wash. 207, 89 Pac. 553; *Duteau v. Seattle Elec. Co.*, 45 Wash. 418, 88 Pac. 755.

The law, as applied to a rapidly moving street car propelled by electricity or cable, is of modern growth, and the relative duties of the driver of the car and the public have not been defined without some difficulty, growing out of the application of the law long since applied in the case of steam railroads operating over their own right of way, and to which they have at least a superior, if not an absolute, right. As necessity is the mother of invention, so is it of the law; so that finally it has been determined by the great weight of authority that the right of the street car company and of the public to use the streets is a common one, subject to some modifications. "The law of the road" does not apply, for the street car cannot turn out, and the street car being in aid of the use for which the street is created, it is not negligence *per se* either to go upon or to cross a street car track in sight of a car, if it be a reasonable distance away. No doubt there are other modifications now and to be defined hereafter, but the requested instruction is at least within the conditions covered by these principles.

The other instructions requested, and upon which error is predicated, were either covered by the general instructions of the court or were properly refused as inapplicable to the case. For the errors noted the judgment is reversed, and the cause remanded for a new trial.

Rudkin, C. J., Fullerton, Morris, and Gose, JJ., concur.