[No. 9119. Department Two. December 2, 1910.]

CHRARS CHRISTENSEN, *Respondent*, v. H. W. HAWLEY *et al.*, *Appellants*.[1]

MASTER AND SERVANT — NEGLIGENCE— SAFE PLACE—EVIDENCE — USUAL CONSTRUCTION. In an action for personal injuries sustained in the fall of a temporary trestle, put up for the purpose of filling up with dirt, and which collapsed during the process of construction because of the removal of stays, it is error to receive evidence as to the usual construction of trestles intended to be used as permanent structures.

EVIDENCE—EXPERTS—OPINIONS. Opinion evidence is inadmissible to prove negligent construction where twenty-five bents, fourteen to twenty-seven feet high, unsupported by braces, collapsed, when hauled from one end by a team on a block and tackle; since the matters were within common knowledge.

MASTER AND SERVANT—NEGLIGENCE—INSTRUCTIONS. Where twenty-five bents of a trestle fell when pulled on by a team, in raising a bent with a block and tackle, the instructions should not submit the question whether the structure was reasonably safe for the purpose for which it was intended but should submit whether it was strong enough and reasonably safe to hold the pulley on the block and tackle.

SAME—FELLOW SERVANTS. The negligence of a fellow servant is no defense where negligence on the part of the master is established.

[1]Reported in 111 Pac. 1061.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 11, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in the construction of a trestle. Reversed.

*Bausman & Kelleher*, for appellants.

*Julius L. Baldwin*, for respondent.

CHADWICK, J.—Appellants were engaged in building a temporary trestle. The trestle consisted of successive bents, with a cap across the top of each bent. Each bent was constructed on the ground, and as finished was raised in position, and secured to the bent immediately behind it by two stay planks laid across the bents and spiked to the cap. Each stay plank was spiked on top of the cap near the end. As the work progressed, stringers, four in number, were put on, reaching from one bent to the other, and securely fastened. When the stringers were put on, the stay planks were removed. It was the purpose of appellants to lay rails along the stringers for conveying dump cars, the object being to fill in so as to construct a bank for a reservoir. The trestle varied in height from fourteen to twenty-seven feet.

On the day of the accident, plaintiff went to work on the top of the trestle. He was directed to assist in putting on the stringers. Others were also engaged in removing the stay planks. During the progress of the work, some of the stay planks were removed before the stringers were fastened to the caps. Whether this was done by direction of the foreman, or by a fellow servant without, or in disobedience of, such direction, we are unable to say, for the testimony is in sharp conflict. During the forenoon no bents were raised, but in the afternoon that part of the work was resumed. The manner of doing this was to attach a block and tackle to the bent, carry it to the trestle, and with a team of horses, raise it in place, securing it with stay planks in the manner described. This being done in this instance, and the stay planks having

been removed at about the place plaintiff was at work, about three hundred feet (twenty-five bents) of the trestle collapsed under the strain. Plaintiff, falling with the trestle, sustained injuries which he now seeks to compensate in damages. From a verdict in favor of plaintiff, defendant has appealed.

The proximate cause of the injury is apparent, and although respondent's counsel discusses the question at some length, we think there can be no question that it was the removal of the stay planks before the stringers had been bolted down. The responsibility of appellants for this condition was the issue of fact to be tried by the jury, and we shall not discuss that question in the light of the errors assigned.

It is first contended that two witnesses were allowed to say how trestles were usually constructed. One said, by putting on stay braces as was done in this case, and also braces from one bent to the other on the side, and all spiked solid. The other witness testified that the top stays were usually braced from the mudsill of one bent to the top of another; that the bents should be cross-braced. The admission of this testimony was error for two reasons. The manner of building trestles to be used as permanent structures was not an issue before the court. The cause of the accident was the removal of the stays, which left the front of the trestle without support when the block and tackle was attached to it. Whether appellants were responsible for this condition was the only affirmative issue, and to fix a standard by describing a trestle intended as a permanent structure without reference to the contemplated use and temporary character of the one in question was to invite a comparison misleading to the jury and prejudicial to the appellants. The testimony was erroneously received for another reason. There was no call for opinion evidence. The jury was just as competent as the alleged experts to draw a deduction from the physical facts. That twenty-five bents, fourteen to twenty-seven feet high, standing unsupported, would likely fall if hauled from one end by a

team working a block and tackle, is within the common knowledge of men. *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170; *Pantages v. Seattle Elec. Co.,* 55 Wash. 453, 104 Pac. 629.

The court gave an instruction to the jury based on the theory of a safe place to work, without such modifications as the circumstances of the case would require. This assignment will need no discussion except as may incidentally occur in the argument which follows. The court gave the following instruction:

"It was the positive duty of the defendants to so construct this trestle as to make it reasonably safe, considering the character of the work, and the character of the structure for the use to which it was wanted to be put, and the circumstances surrounding it there, for a workman to prosecute the work there. And if you should believe that Zulyvich disobeyed Dick Armstrong's instructions, respecting said planks, and the ones he should remove, and that because of his disobeying such instructions contributed to the injury; and if you also find that there was not sufficient other braces placed upon the trestle which an ordinary prudent builder would have put on, and that that was the proximate cause of the injury, then I instruct you that the defendant would be liable."

It seems evident that the instruction was grounded upon a wrong theory of the case. Whether the trestle was reasonably safe for the use to which it was intended to be put, was not the question for the court to try. It might not have been, and yet it may have been, perfectly safe for the use to which it was being put. The question is, not whether the trestle was so constructed that it would pass opinion as a permanent structure designed for heavy traffic, but whether it was, as constructed, strong enough to hold the fixed pulley on the block and tackle without falling when the front bent was raised. If the jury should find that, as designed and constructed, the trestle was safe for this purpose, then the inquiry should be whether Zulyvich, a fellow workman, was or-

dered by appellants' foreman to remove the stays, or whether he removed them without such orders. If the jury should find that the trestle as designed was safe to meet the purpose to which it was being put, the question of the negligence of a fellow servant would arise. But if it should find that it was not safe for that purpose, even though the stays had not been removed, the question of fellow servant would not occur, under the following authorities: *Keating v. Pacific Steam Whaling Co.*, 21 Wash. 415, 58 Pac. 224; *Costa v. Pacific Coast Co.*, 26 Wash. 138, 66 Pac. 398; *Eskildsen v. Seattle,* 29 Wash. 583, 70 Pac. 64; *Czarecki v. Seattle & S. F. R. & Nav. Co.*, 30 Wash. 288, 70 Pac. 750; *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *Conine v. Olympia Logging Co.*, 36 Wash. 345, 78 Pac. 932; *Ralph v. American Bridge Co.*, 30 Wash. 500, 70 Pac. 1098; *Sroufe v. Moran Bros. Co.*, 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L. R. A. 313.

The judgment of the lower court is reversed, and the case remanded for a new trial.

RUDKIN, C. J., MORRIS, and CROW, JJ., concur.