[No. 14901.　Department One.　January 10, 1919.]

## C. P. BLANCHARD *et al.*, *Respondents*, v. PUGET SOUND TRACTION, LIGHT & POWER COMPANY, *Appellant.*[1]

APPEAL (465)—REVIEW—HARMLESS ERROR—INSTRUCTIONS CURED BY VERDICT. An erroneous instruction is harmless if, under the evidence, no other verdict could have been rightfully returned.

STREET RAILROADS (20) — CROSSING ACCIDENTS — CONTRIBUTORY NEGLIGENCE—DRIVER OF AUTO. The driver of an automobile, struck by a cable car at a street crossing, is guilty of contributory negligence, as a matter of law, where he saw the approaching car in ample time to have stopped, instead of which he speeded up in an attempt to cross ahead, expecting the car to slow down; and having seen the car, it is immaterial that no signal or alarm bell was sounded.

Appeal from an order of the superior court for King county, Frater, J., entered February 6, 1918, granting a new trial, after the verdict of a jury rendered in favor of the defendant, in an action for personal injuries sustained in a collision between an automobile and a street car. Reversed.

*James B. Howe* and *H. S. Elliott,* for appellant.

*H. E. Foster,* for respondents.

MITCHELL, J.—Shortly after dark on October 1, 1916, plaintiffs, husband and wife, were riding in their automobile, which collided with a street car at the crossing of 20th Avenue south and Yesler Way, in the city of Seattle, causing personal injuries and property damage to them. The charge of negligence against the defendant was responded to by a denial and an affirmative answer of contributory negligence on the part of plaintiffs. A trial by jury resulted in a verdict for defendant. The superior court, believing it

[1]Reported in 177 Pac. 822.

had used improper language in one of its instructions, granted a new trial, from which defendant appeals.

If it be considered that an erroneous instruction was given, alleged error predicated thereon was harmless, if, under the evidence, no verdict could have been rightfully returned thereon other than the one which was rendered, in which case it would be the duty of the trial court to enter judgment for defendant rather than grant a new trial.

At the place of crossing, 20th Avenue south runs north and south, and was variously estimated to be from thirty to forty feet wide between the curbs, while Yesler Way runs east and west, and upon it appellant operated a double track cable railway, the most southerly rail of which lies fourteen feet north of the south curb of Yesler Way. Both streets were paved. Yesler Way was level. Approaching Yesler Way (from the south, as respondents were traveling), 20th Avenue south, for a distance of more than a block, was of about one per cent up-grade. The cable used to draw the street car had a maximum speed of a little less than ten miles an hour. The cable car was twenty-eight feet long and could be reasonably stopped on a level within thirty or forty feet. It was going east on the southerly track at the time of the accident. For about twenty-five years, respondents had lived eight or ten blocks north of the place of the accident, and for more than four years had operated the automobile over this street crossing from two to six times a day and knew that cable cars were run on Yesler Way.

Mr. Blanchard testified that he was going north on the right side near the east curb of 20th Avenue south; that, in approaching Yesler Way, he slacked up, looking to the right, and as he got pretty near the corner, his wife, who was sitting on his right-hand side, called

out: "Pa, there is a car," whereupon he turned quickly and saw the car fifteen or twenty feet west of his course. His own language was:

"When getting near the street, naturally I slowed down, and as I got pretty near to the corner my wife, who was on my right hand side, hollered, 'Pa, there is a car,' and I turned quickly and saw it was impossible to avoid a collision, *that I would hit the car right on the side if I continued, so I speeded up a little bit, I put my foot on the accelerator and turned to the right, skipping the corner and going down the hill towards 21st street, knowing that the car would see me and would stop and in that way would let us pass without any difficulty.* The car made no effort to stop whatever, and about fifteen or twenty feet below the corner of the street it hit me right on the side. . . . . The car was about 15 or 20 feet west of me when I saw it. I was then going about 6 or 8 miles an hour. . . . Before reaching the intersection of Yesler and 20th I slowed down my car to 6 or 8 miles. . . . My wife called my attention to the fact that there was a street car coming when we were close up to Yesler. At that time we had run up so that we could see the intersection very plainly. We had not gotten our front wheels into Yesler Way when my attention was called to it. We were approaching right to it, and in the next second we would be right into the Yesler car going across. When my wife called my attention to the fact that a street car was coming, I was within a few feet of being on Yesler Way. . . . I didn't look in the direction from which the street car came. I had no reason to look in that direction that I know of."

Mrs. Blanchard, after testifying that, when they reached Yesler Way, they paused to see about the cars coming, and then, just as they started up, she told Mr. Blanchard there was a car coming, further testified:

"When I saw the cable car coming we were right near the corner of Yesler, near 20th and Yesler, be-

fore you get to Yesler. I should say I could then see
west on Yesler Way half a block. I had to look past
Mr. Blanchard. I didn't see it coming until we started
to go across. We were just going to start up when
I saw it coming. I should say Mr. Blanchard was
traveling five miles an hour at that time. We were
then at the corner there, just before you get into Yes-
ler Way. I should say we were the distance of the
curb on Yesler Way from the car track at that time."

The complaint alleges that the negligence of ap-
pellant consisted in

":Crossing and attempting to cross Yesler Way
without a signal or alarm of any kind and without any
warning, and at said time the said defendant was
operating the said cable car without lights sufficient
to attract the attention of any one attempting to cross
at right angles on said Yesler Way. That, as the
plaintiffs were attempting to cross Yesler Way, the
defendant, through its officers and servants, negligent-
ly and carelessly and in total disregard to the rights
of the plaintiffs in the premises, ran its cable car into
and upon plaintiffs' automobile."

As to the cable car being lighted, the respondent
Mr. Blanchard, in reply to the question: "As far as
you could see, those lights in the car were no different
from the ordinary lights in those cars, were they?",
said: "No difference."

As to signal or alarm bells, while appellant sub-
mitted ample proof that signals were given, it was
wholly immaterial, so far as respondents were con-
cerned, whether any were given or not, for, by Mr.
Blanchard's testimony, he saw the car before getting
into danger of it, and Mrs. Blanchard testified:
":When I saw the cable car coming we were right near
the corner of Yesler. . . . I should say I could
then see west on Yesler Way half a block."

This court said in the case of *Van Dyke v. Johnson*,
82 Wash. 377, 144 Pac. 540, with reference to a sim-

ilar situation: "Having seen and observed the car, sounding of the horn could have been of no additional efficacy in avoiding an accident." Also see *Camozzi v. Puget Sound Traction, Light & Power Co.*, 94 Wash. 545, 162 Pac. 987.

Further, if it be contended appellant was negligent other than in the matter of lights and signals, we must bear in mind the relative rights and obligations of the parties. This court, in the case of *Traver v. Spokane St. R. Co.*, 25 Wash. 225, 65 Pac. 284, said:

"Cars cannot turn from their course; they run on fixed tracks, and cannot accommodate themselves as readily to emergencies and cannot stop with the same promptness or facility, as drivers of free vehicles, and drivers of such vehicles must yield the right of way with reasonable promptness to the passing cars."

and again, in the case of *Arpagaus v. Washington Water Power Co.*, 86 Wash. 83, 149 Pac. 346, this court said:

"These rights are mutual and reciprocal. Each must have a due regard for the rights and safety of the other. Street cars, being operated upon fixed tracks, have in a sense a right of way over that part of the street upon which the tracks are laid. *Pantages v. Seattle Elec. Co.*, 55 Wash. 453, 104 Pac. 629. The motorman is entitled to act upon the assumption that a driver or a pedestrian will exercise due care for his own safety. It is not necessary for him to stop the car until he sees that the other is in apparent danger. *Duteau v. Seattle Elec. Co.*, 45 Wash. 418, 88 Pac. 755."

In this case it is manifest that, as respondents were situated near the curb on the east side of 20th Avenue south, just in the act of moving into Yesler Way, at the time they saw the street car fifteen or twenty feet to their left, the street car was already in and crossing 20th Avenue south.

The proof shows respondents did nothing to absolve themselves from the performance of the duty of caring for their own safety. On the contrary, it appears that respondent was heedlessly flirting with, if not inviting, danger. Undisputed disinterested evidence shows that respondent could have easily and reasonably stopped the automobile at that place, at the speed they say they were going, within twelve inches, while, according to their own testimony, they had about fourteen feet within which to stop and avoid a collision. Instead of stopping his car, as reason and caution would suggest, he became impatient and heedless. He said: "I speeded up a little bit, I put my foot on the accelerator and turned to the right, skipping the corner and going down the hill towards 21st street, knowing that the car would see me and would stop and in that way would let us pass without difficulty." Thus, instead of stopping, as he should, respondent plainly states that he actually speeded up, turned to the right, skipped the corner, going down the hill, so as to give the street car a chance to see him that it might slow up to let him pass without difficulty.

Respondents thus carelessly placed themselves in a situation similar in principle to those discussed in the cases of *McEvilla v. Puget Sound Traction, Light & Power Co.*, 95 Wash. 657, 164 Pac. 193; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458, and *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51, upon which authorities it must be held, as a matter of law, that respondents were guilty of contributory negligence, preventing recovery.

It happened that the verdict, favorable to the defendants, interpreted the facts just as the law does, for, although the trial judge, in granting the respond-

ents' motion for a new trial, expressed the view that certain language used in one of his instructions was unfortunate, an examination of it in the light of respondents' own testimony convinces us that it was harmless.

The order granting a new trial is reversed, and the cause remanded with direction to the superior court to enter judgment for defendant dismissing the action.

MAIN, C. J., MACKINTOSH, TOLMAN, and CHADWICK, JJ., concur.