[No. 15814.　Department One.　September 8, 1920.]

NELLIE CARLISLE, *Respondent*, v. GEORGE E. HARGREAVES
*et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (380, 384, 390)—USE OF STREETS—COL-
LISION AT CROSSING—FAILURE TO SOUND HORN—PROXIMATE CAUSE—
QUESTION FOR JURY.　In an action by a passenger in an automobile
in collision with defendant's automobile at a street intersection, al-
though the failure of defendant to sound his horn would not have
prevented the collision in view of the knowledge of plaintiff's driver
of the approach of defendant's car, yet it was for the jury to say
whether or not such failure of defendant to sound his horn was
the proximate or contributing cause of plaintiff's injury, where
plaintiff did not see or know of the approach of defendant until the
instant of the collision; since the court cannot say, as a matter of
law, that a timely warning might not have enabled plaintiff to
prevent, or at least lessened, her injury.

TRIAL (121)—MISCONDUCT OF JURY—QUOTIENT VERDICT.　A new
trial will not be granted for misconduct of the jury in taking a
quotient verdict, where the affidavits show that they did determine
by that process what the average of the amounts each juror voted
to award plaintiff would be, but that the ultimate amount awarded
was not made in compliance with any previous agreement entered
into between them upon their consideration of the case.

SAME (118)—MISCONDUCT OF JUROR—COMMUNICATING WITH WIT-
NESS.　The conduct of a juror in questioning a witness as to defend-
ant's nationality, and stating that another member of the jury
thought she was German, during a recess of the court, while cen-
surable, is not ground for a new trial in that it showed prejudice
against the defendants, since it was probably prompted by no other
motive than curiosity.

DAMAGES (80)—PERSONAL INJURIES—EXCESSIVE VERDICT.　A ver-
dict for $1,000 for injuries sustained in an automobile collision,
though excessive if measured by plaintiff's money loss incurred for
medical attendance and for her loss of wages, will not be held ex-
cessive in view of severe injuries sustained, and pain and suffering
for several weeks, precluding the court from saying, as a matter of
law, that the award is excessive or prompted by prejudice or passion
on the part of the jury.

[1]Reported in 192 Pac. 894.

Appeal from a judgment of the superior court for King county, Hall, J., entered October 18, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in an automobile collision. Affirmed.

*William U. Park* and *Paul S. Dubuar,* for appellants.

*Clem J. Whittemore* and *H. M. Ramey, Jr.,* for respondent.

PARKER, J.—The plaintiff, Miss Carlisle, seeks recovery of damages which she claims to have suffered as the result of the negligent driving of an automobile by the defendant Mr. Hargreaves, in Seattle, which automobile was at the time owned by the community consisting of Mr. Hargreaves and his wife, and was then being driven by him for the community. Trial in the superior court for King county resulted in a verdict and judgment awarding to the plaintiff recovery in the sum of $1,000 against the defendants, from which they have appealed to this court.

Just prior to the time respondent, Miss Carlisle, was injured, she was riding in the rear seat of an automobile, between two gentlemen friends, as a guest of her brother-in-law, Mr. Yaple, who was driving the automobile, his wife sitting in the front seat with him. They were proceeding northerly along Fourth avenue, approaching Virginia street, which crosses Fourth avenue at right angles. At the same time, appellants were approaching Fourth avenue in their automobile, from the east, along Virginia street. The two automobiles came into collision within the street intersection, resulting in Yaple's automobile, in which respondent was riding, being thrown violently against the curb and an electric light post, at the northwest corner of the street intersection, though the automobile was not upset, evi-

dently because of its being thrown against the post. Miss Carlisle was severely injured. The evidence seems to render it plain that Hargreaves did not sound his horn as he approached the street intersection, or at any time prior to the collision, though the impending danger of a collision must have been apparent to him in time for him to have sounded his horn after realizing such impending danger. Yaple saw Hargreaves' automobile approaching and was as fully and timely apprised of the impending danger as he would have been had Hargreaves given timely warning by sounding his horn. Respondent, however, did not see nor become conscious of the approach or presence of appellant's automobile until the instant of the collision. An ordinance of the city, the force and validity of which is not questioned, reads in part as follows:

"No . . . driver of a motor vehicle . . . shall fail to sound his signal device as a warning when there is danger of collision or accident by reason of the approach of such . . . vehicle . . ." Seattle Ordinance, No. 37,434, § 11.

Among other grounds of negligence relied upon at the trial by counsel for respondent was the failure of Hargreaves to sound his horn as a warning of the approach of his automobile. Counsel for appellants requested the trial court to withdraw this alleged negligence from the consideration of the jury. This the court did not do, but submitted it to the jury by appropriate instructions with other alleged negligence. In so ruling it is insisted that the court erred to the prejudice of appellants, because, since Yaple saw the approach of appellants' automobile, he was concededly as fully and timely advised thereof and of the impending danger as he would have been had Hargreaves sounded his horn.

Counsel invoke the law as announced in our decisions in *Van Dyke v. Johnson,* 82 Wash. 377, 144 Pac. 540; *Camozzi v. Puget Sound Tr. L. & P. Co.,* 94 Wash. 545, 162 Pac. 987, and *Blanchard v. Puget Sound Tr. L. & P. Co.,* 105 Wash. 226, 177 Pac. 822, which is, in substance, that when one sees an approaching car or vehicle and is injured thereby, under such circumstances as to timely furnish him all the information which he could have acquired from the sounding of a signal as required by law, the failure to sound such signal cannot be the proximate cause of the injury, and is therefore not negligence which can be considered as lending any support to the injured person's claim for damages. Had Yaple, the driver of the automobile in which respondent was riding, been the one who was injured by the collision, it would seem plain that the failure of Hargreaves to sound his horn would not have been the proximate cause of such injury; but we think that is not the test as to whether or not Hargreaves' failure to sound his horn was the proximate cause of respondent being injured; since she did not see nor become conscious of the approach of appellant's automobile until the instant of the collision. It seems to us that the ordinance requirement of the sounding of a signal in a situation like this is for the benefit of all persons who may be threatened with injury, and to give all such persons warning to the end that they may so act, looking to their safety, as opportunity may afford. We are not able to say, as a matter of law, in the light of the evidence here disclosed, that a timely warning from appellant's automobile might not have enabled respondent to do some act looking to her safety that would have prevented, or materially lessened, her injury. She was manifestly deprived of any such opportunity by the fact, as may have been found by the jury,

of Hargreaves' failing to sound his horn. The fact that the sounding of a signal from appellant's automobile would not have prevented the collision, in view of the knowledge Yaple had of the approach of appellant's automobile, does not, we think, make it so plain that we can say, as a matter of law, that respondent could not have prevented, or at least materially lessened, her injury, had she been timely warned of the approaching collision by the giving of a signal as prescribed by the ordinance. We think it was for the jury to say whether or not the failure of Hargreaves to sound his horn materially contributed to respondent being injured.

It is contended that there was misconduct of the jury, in that they arrived at their verdict as to the amount of damages awarded respondent by taking and adopting, in compliance with a previous agreement made between them, a quotient obtained by taking the average of the amount that each juror first voted respondent was entitled to. The affidavits presented touching this question, upon the hearing of the motion for a new trial, do seem to show that the jurors did determine by this process what the average of the amounts each juror voted to award respondent would be; but we think the preponderance of the evidence, presented to the court in the form of the affidavits, shows that the ultimate amount of $1,000 awarded was not made in compliance with any previous agreement between the jurors entered into upon their consideration of the case. Indeed, a reading of all of the affidavits causes us to very much doubt that $1,000 was the exact quotient arrived at in the determination of the average of the awards voted by each juror. In *Wiles v. Northern Pac. R. Co.*, 66 Wash. 337, 119 Pac. 810, Judge Ellis, speaking for this court, observed:

"There was no statement that the jurors had agreed in advance to abide by the result. Such an agreement is the very essence of the misconduct charged. The burden of showing all the essential elements of the misconduct charged was upon the appellant. This court has often held that the taking of a quotient is not in itself misconduct, unless it appears that the jury had agreed in advance to be bound by it; even though the verdict returned be exactly or nearly the amount of the quotient. *Stanley v. Stanley,* 32 Wash. 489, 73 Pac. 596; *Conover v. Neher-Ross Co.,* 38 Wash. 172, 80 Pac. 281, 107 Am. St. 841; *Bell v. Butler,* 34 Wash. 131, 75 Pac. 130; *Watson v. Reed,* 15 Wash. 440, 46 Pac. 647, 55 Am. St. 899."

We think our decision in *United Iron Works v. Wagner,* 98 Wash. 453, 167 Pac. 1107, relied upon by counsel for appellants, is not in point here. In that case there was an agreement entered into between the jurors to determine the amount of their award by the quotient process, and the award was so made without further consideration. We think there was no misconduct of the jury in this case in this respect calling for a new trial. Some contention is made that the trial court erred in extending the time for receiving affidavits in resistance of the motion for a new trial upon this ground. We are quite convinced, however, that there was no abuse of discretion on the part of the court in this particular.

It is contended that there was misconduct of one of the jurors in talking about the case to Mrs. Lutz, who was a witness in the case, during a recess of the court while the case was on trial. Adopting appellants' counsel's version of the affidavit showing this incident, it is as follows:

"This affidavit sets forth that Mrs. Lutz had testified in the case, and that later in the same day she was standing in the corridor of the court house when she

was approached by one of the jurors in the case, who questioned her with regard to appellant Marceline D. Hargreaves, who had also testified in the case. The juror asked Mrs. Lutz, 'What nationality is that lady?' Mrs. Lutz asked her, 'What lady?', to which the juror replied, 'I am one of the jury on that case you were on this morning.' Mrs. Lutz then said, 'Oh, you mean Mrs. Hargreaves?' The juror having answered in the affirmative, Mrs. Lutz said, 'She's French.' The juror then stated that she thought Mrs. Hargreaves was French, but that there had been some discussion by the jury about the matter and that one of the other ladies on the jury thought Mrs. Hargreaves was German.''

It is first argued that, since hostilities of the late war had just ceased at the time of the trial and there was a strong anti-German feeling in this country, the conversation showed prejudice on the part of the juror against the appellants, because of the juror's apparent impression that Mrs. Hargreaves was a German, and that the juror was seeking to confirm her impression in that respect. This argument manifestly would not avail appellants, because the information which the juror there received, that is, that Mrs. Hargreaves was French, would seem to be plainly to appellants' advantage, rather than the contrary, should we assume that the question of Mrs. Hargreaves' nationality could be considered as having any influence on the juror at all. On the other hand, it is argued that the fact that the juror discovered that Mrs. Hargreaves was French might have caused the juror to be prejudiced against her upon the general ground of her foreign nationality. Neither of these arguments, we think, under the circumstances, merits serious consideration. It is hard to escape the conclusion that the juror's question was prompted by other than mere curiosity as to Mrs. Hargreaves' nationality. While we think that the act of

the juror was in a measure censurable, it is not such as to call for a new trial.

It is strenuously contended that the award of the jury was excessive in amount. If we were to measure the award by the actual money loss suffered by respondent in her expense incurred for medical attendance, and in her loss of wages, it would be easy to say that the award was excessive; but since she was severely injured, and experienced pain and suffering for a period of several weeks, we cannot say, as a matter of law, that the total award of $1,000 was excessive, or that its measuring was prompted by prejudice or passion on the part of the jury.

The judgment is affirmed.

HOLCOMB, C. J., and MITCHELL, J., concur.