[No. 16759.  Department One.  March 8, 1922.]

MARK E. COLE *et al., Appellants,* v. WASHINGTON WATER POWER COMPANY, *Respondent.*[1]

STREET RAILROADS (22)—COLLISION AT CROSSING—PROXIMATE CAUSE. The failure to sound a street car signal on approaching a street crossing cannot be ascribed as the proximate cause of collision between the car and an automobile, where both the driver and an occupant of the automobile were aware of the approach of the car in sufficient time to have avoided the collision.

SAME (20)—COLLISION AT CROSSING—CONTRIBUTORY NEGLIGENCE. One driving an automobile toward a street car line, at a rate of speed slow enough to permit of his stopping the automobile after seeing a street car approaching the crossing, is guilty of contributory negligence in a collision resulting from his driving upon the track, irrespective of whether the street car may have been exceeding the speed limit, and his negligence is imputable to his employers who were occupants of the automobile.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered March 23, 1921, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for personal injuries sustained through a collision between plaintiff's automobile and a street car. Affirmed.

[1]Reported in 204 Pac. 1060.

*E. B. Quackenbush* and *S. R. Green,* for appellants.
*Post, Russell & Higgins,* for respondent.

PARKER, C. J.—The plaintiffs, Cole and wife, seek recovery for personal injuries suffered by both of them while riding in their automobile, at the intersection of Scott street and Fifth avenue, in the city of Spokane, claimed by them to be the result of the negligent operation of one of the street cars of the defendant company. The cause proceeded to trial in the superior court for Spokane county, sitting with a jury, upon the issues of the negligence of the servant of the defendant in the operation of its street car, and the contributory negligence of the servant of the plaintiffs in the operation of their automobile. At the conclusion of the evidence introduced in behalf of the plaintiffs, counsel for the defendant, by appropriate motion, challenged the sufficiency of the evidence to support any recovery by the plaintiffs; the motion being rested upon the ground of want of proof of negligence on the part of its servant in the operation of the street car, and upon the ground of conclusive proof of contributory negligence on the part of the plaintiffs' servant operating their automobile. The trial court granted the motion and directed the jury to return a verdict in favor of the defendant, which was done. A judgment was rendered accordingly, from which the plaintiffs have appealed to this court.

Observations made by the trial judge sustaining the challenge to the evidence indicate that he rested his decision upon the theory of contributory negligence on the part of the servant of appellants in the operation of their automobile. Fifth avenue runs east and west and has upon its surface two street car tracks. East-bound cars run upon the south track, while west-bound cars run upon the north track. The south rail

of the south track is twenty-four feet from the south boundary line of Fifth avenue. Scott street runs north and south, terminating at its north end in, and at right angles to, Fifth avenue. Scott street descends to Fifth avenue for a distance of some three hundred feet from the south, on a grade of five per cent. Fifth avenue descends to Scott street for a distance of one hundred feet or more from the west, on a grade of one and four tenths per cent. At the southwest corner of Fifth avenue and Scott street there is a store building, the north wall of which fronts approximately twenty-five feet along the south boundary line of Fifth avenue, and the east wall of which fronts approximately forty-five feet along the west boundary line of Scott street. There are other buildings and obstructions south of this store building along the west side of Scott street for a considerable distance—probably two hundred feet or more —preventing persons, while approaching Fifth avenue from the south along Scott street, from seeing to the west along Fifth avenue, until they come near to the south boundary of Fifth avenue, where they can see west past the corner of the store building, which corner of the store building, as already noticed, is twenty-four feet from the south rail of the south street car track.

Early in the evening of August 21, 1920, appellants, Mr. and Mrs. Cole, were visiting at the home of a Mrs. McLaughlin, situated on the west side of Scott street, at an agreed distance of three hundred fifty feet south of Fifth avenue; their automobile being parked in front of Mrs. McLaughlin's home. At about half past eight o'clock, they started to go to their home in their automobile, both sitting in the rear seat, their driver sitting in the front seat and driving the automobile for them. They proceeded north on Scott street, intending to turn west on Fifth avenue. Their driver drove the automobile along the easterly side of the

roadway of Scott street, keeping near the east curb, and, while they were crossing the south street car track on Fifth avenue, well south of the center line of Scott street, an east-bound street car, belonging to respondent, collided with appellants' automobile, striking it broadside, at the instant its front wheels were to the north and its rear wheels to the south of the south track. The automobile was pushed or carried sideways to the east by the street car a distance of about forty-five or fifty feet, when the car came to a stop with the automobile still across the front of the car, the fender of the car having passed under the automobile. Appellants were both seriously injured by the collision. Appellants' driver testified as to what he saw and did, immediately preceding the accident, in part as follows:

"I was driving the Ford automobile at the time of the accident complained of. . . . We had been at Mrs. McLaughlin's and the car was parked in front of her house on the west side of the street. . . . we proceeded north on Scott street and when the front wheels just crossed the sidewalk across Scott street, I first saw the car something like half way, or maybe more, up the street and when I was on the crossing, right on the first track, the street car was right on to me before I knew it. I was something like twenty-four feet south of the first rail when I first saw the street car. The front wheels of the auto were just over the sidewalk crossing. I was near the right-hand curb of Scott street and going north. I had been looking out for a street car as I approached the crossing. There is a story and a half building and several other houses on the west side of Scott street and three or four houses and several trees and telephone posts on the south side of Fifth avenue west of the brick building. . . . The street car did not sound any bell, whistle or other signal of its approach. When the auto was struck it was setting as square across the track as I could tell at the time. The front wheels were about a foot over the north rail of the south track and the

hind wheels about a foot south of the south rail. The street car struck the auto broadside. I was knocked unconscious by the collision and knew nothing after that. I was sitting on the left-hand side of the auto next the street car, driving; . . . On the auto there were two headlights and a rear light in perfect condition. Q. Now in your best judgment, how fast were you driving the automobile just before the accident? A. Between five and ten miles an hour. Q. Now, you saw this car when it was over half a block away from you? A. Yes, sir. Q. And it struck your car after you had driven twenty-two or twenty-four feet, did it not? A. Yes, sir. I subsequently measured the distance from the place where the street car seemed to me to be at the time when I first saw it and the place where it was when it struck the auto and found it to be about one hundred ninety-eight feet. . . . I had my power on up to the time I approached Fifth avenue and threw it off before I got there. I threw it off about fifty feet south of the south crosswalk; by crosswalk I mean sidewalk crossing. I let it coast from there and did not throw it back in. I had my brakes on going down the hill but did not have them on when I approached the crossing, nor at all afterwards until I was struck by the street car. I just let it drift at five to ten miles an hour without power. Oh, about seven; six or seven; I couldn't say for sure. . . . [It is apparent that the driver meant, by his reference to having the power on, and throwing it off as he approached Fifth avenue, that he merely threw out his clutch and did not stop the running of his engine.] When I first saw the street car I was sitting just back of the south line of the south crosswalk. . . . Q. When you saw that street car back there more than half a block away,—did you, what did you do? A. I put my attention to crossing. Q. And did you look at the street car again? A. Not until it was right on me. Q. And how far was it then? A. It would be about ten feet. Q. And all this time you didn't put on your power? A. No, sir. Q. Just drifting on across there? A. Yes, sir. . . . Q. When you saw that street car, . . . one hun-

2—119 WASH.

dred ninety-eight feet up the street there, the street car was moving at that time? A. I suppose it was. Q. Well, you just took a glance at it, did you? A. Yes, sir. Q. And then you looked down and attended to running your car? A. Yes, sir. Q. You didn't try to hurry up or anything of that kind? A. I just glanced—I just went on as if I didn't know there was going to be an accident. I just went on. Q. You didn't pay any more attention to the street car, is that right? A. Until it was right on to me. Q. About ten feet away from you? A. Yes, sir. . . . The night was rather dark; it was not stormy or cold; a pleasant August evening. . . . Q. Now you stated that you didn't turn on your power, after you had a glimpse of the street car, why was that? A. In turning the corner I couldn't use my power; it was a rough corner. Q. You say that is a rough corner? A. The rails are above the ground in some places and there is chuck holes. . . . Q. Well, now you had your headlights on, didn't you? A. Yes, sir. They would shine one hundred feet. That would show us whether the street was rough or smooth. I was looking ahead and saw the street. . . ."

Mrs. Cole testified as to what she saw, immediately preceding the accident, in part as follows:

"We must have been going between five and ten miles an hour. I couldn't say just what, I am not used to driving an automobile. I was riding in the rear seat in the middle, my little girl to my left and husband at my right. Q. As you came near the intersection of Scott and Fifth avenue, did you look for vehicles or cars on Fifth avenue? A. Yes, sir. I always keep a watch. . . There was no car in sight until we were on the crosswalk on the south side of Fifth avenue. . . The front of the auto was over the crossing. When I first saw the street car it was half way up the block west on Fifth avenue. Q. Did you say anything to the driver about the car then? A. I didn't say anything to the driver then because I didn't think there was any danger in it that far off. I thought we had time to get across safely. I never heard the street car whistle,

sound a bell or give any alarm at any time. Q. When did you next notice the street car after that? A. Just as we started across the track; the fore part of our car was across the track. Q. Well, then where was it? A. Well, I couldn't tell; it was just a flash and I never saw or heard anything more. . . . Q. Did you notice whether it was going fast or slow? A. I just got a glimpse of it at first so I couldn't tell you. . ."

Mr. Cole, referring to what occurred immediately preceding the accident and as to what he saw and heard, or, rather, as to what he did not see and hear, testified in part as follows:

"We wasn't going over seven or eight miles an hour . . I could tell just about what speed we was going. I didn't see or hear the street car at all that evening. . . I was sitting on the back seat on the right-hand side . . . I didn't look for any vehicles; . ."

A Mrs. Tottenhouse testified as to her observations of the street car and automobile immediately preceding the accident, in part as follows:

"On the evening of the accident I was coming east on Fifth avenue about eight thirty in the evening . . . I noticed there was a street car coming, that seemed to be coming fast, and I got the impression it was coming fast from the sound, . . and then all at once there was a sharp blast of the whistle and I glanced around and the automobile was just across the track and the street car was almost on it, and then almost instantly the crash came. . . When I first heard the whistle and the crash, I wasn't very far east of Scott street, . ."

Mrs. McLaughlin testified as to what she saw while standing in front of her home on Scott street, which, as already noticed, is three hundred fifty feet south of Fifth avenue, in part as follows:

"I was standing in front of my home about a block away. The Coles had been calling at my home and left

just before the accident. They started and were going about ten or twelve miles an hour, I should judge, and when they got to the corner I saw the street car emerge from the corner of the building going about twenty-five miles an hour and the whistle and the accident all happened at once, . . . I saw the street car for about forty-five feet, I think, before it struck the auto. I didn't measure the distance. . . When I first saw the street car come out from behind the building, the auto was over to the right of the road. The street car was going east and when it came out from behind the building the hind wheels of the auto were just passing over the south crosswalk. . . I went down to the scene of the accident. The front of the street car was past the crossing on the east side of the street. I don't know the length of a street car. The back part had not reached the east crosswalk. . ."

This is the substance of all the evidence, telling us of the speed of the street car, the sounding of any signal by the motorman, the looking by those in the automobile for the approach of a street car from the west, the speed of the automobile, and the control of the automobile by appellants' driver.

At the time of this accident, there was in force an ordinance of the city of Spokane (No. C2403, § 3), reading in part as follows:

"That at street intersections street cars shall have the right of way over other vehicles. . ."

Noticing first respondent's negligence, claimed by appellants to be the proximate cause of their injury, it seems to us very difficult to arrive at the conclusion that reasonable minds could decide other than that this evidence fails to affirmatively show that the street car approached or entered the street intersection at an excessive or unlawful rate of speed. It is true that appellants' driver places the street car, when he first saw it, at such a distance west of the intersection that

it would have to travel at an excessive rate of speed in order to arrive at the place of the collision at the same time the automobile did; but it is to be remembered that appellants' driver's estimate of the distance the street car was away when he first saw it was, of necessity, not an exact estimate and was based upon little else than a mere glance by him in that direction; and it is also to be remembered that the car ran only forty-five or fifty feet at most past the point of collision before it came to a stop. We pass, however, the question of respondent's negligence in running the street car at an excessive rate of speed, and assume, for argument's sake, that the jury might be warranted in finding respondent negligent in that particular. As to the alleged negligence of respondent's motorman in failing to sound a signal upon approaching the street intersection, it is manifest from the testimony of both Mrs. Cole and the driver of the automobile that such failure to sound a signal could in no event have been the proximate cause of the accident, since it is manifest that both Mrs. Cole and the driver of the automobile saw the street car and were as well advised of its approach as if the signal had been sounded, as required by the ordinance. *Blanchard v. Puget Sound T., L. & P. Co.,* 105 Wash. 226, 177 Pac. 822. It is apparent then that the only negligence respondent was guilty of, with which we are here concerned, is the alleged excessive speed of the street car, which manifestly was slight in character, though, for present purposes, we shall assume it would have been sufficient to carry the case to the jury, apart from the contributory negligence of the driver of the automobile. We notice this manifest slight degree of negligence on the part of respondent, to the end that we have a better view of the position of the driver of the automobile with reference to the

approach of the street car, and of his opportunity to have avoided the accident.

Whatever may be said as to respondent's negligence becoming a question for the jury to decide, we think, in any event, it is apparent that appellants' driver was, as a matter of law, guilty of contributory negligence such as to preclude recovery by appellants in this case, as held by the trial court. In view of appellants' driver's knowledge of the approach of the street car, or, rather, the knowledge which he, as a reasonably prudent person, ought to have possessed of its approach; the manifest comparatively slow speed of the street car—though possibly exceeding the lawful speed at that place—evidenced by the short distance it ran, following the collision, before stopping; the right of way of the street car over that of the automobile; and the manifest ease with which appellants' driver could have stopped the automobile within the twenty-four feet or more it traveled while he had a plain, unobstructed view of the street car before reaching the south street car track; we are of the opinion that this case must be decided, as a matter of law, in favor of respondent, because of the contributory negligence of the driver of the automobile, who, for the purpose of this case, was appellants' servant, rendering his contributory negligence imputable to appellants themselves. *Bowden v. Walla Walla Valley R. Co.,* 79 Wash. 184, 140 Pac. 549; *McEvilla v. Puget Sound Tr., L. & P. Co.,* 95 Wash. 657, 164 Pac. 193; *Herrett v. Puget Sound T., L. & P. Co.,* 103 Wash. 101, 173 Pac. 1024; *Blanchard v. Puget Sound T., L. & P. Co.,* 105 Wash. 226, 177 Pac. 822; *Devitt v. Puget Sound T., L. & P. Co.,* 106 Wash. 449, 180 Pac. 483; *Heath v. Wylie,* 109 Wash. 86, 186 Pac. 313; *Harris v. Seattle,* 118 Wash. 327, 203 Pac. 943.

One or two other contentions are made in appellants' behalf, but we find it unnecessary to notice them here, since, however we might view them, what we have already said would become decisive of the case.

The judgment is affirmed.

BRIDGES, FULLERTON, MITCHELL, and TOLMAN, JJ., concur.